# EXHIBIT 1

## *M&M GRAPHICS SERVS. v. WIAR*

Court of Appeals of Michigan

June 19, 2003, Decided

No. 235853

**Reporter**

2003 Mich. App. LEXIS 1468; 2003 WL 21419272

M&M GRAPHICS SERVICES, INC., Plaintiff-Appellant/Cross-Appellee, v ROBERT C. WIAR, Defendant-Appellee/Cross-Appellant, and CLARKSTON CREEK GOLF CLUB INC., SPRING LAKE COUNTRY CLUB NO. 2, INC., and SPRING LAKE PROPERTIES, INC., Defendants-Appellees.

**Notice:** **[\*1]** THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**Prior History:** Oakland Circuit Court. LC No. 99-014019-CZ.

**Judges:** Before: Talbot, P.J., and Neff and Kelly, JJ.

## Opinion

PER CURIAM.

In this fraud, statutory conversion and conspiracy action, plaintiff appeals as of right from an order of judgment against defendant Robert C. Wiar [1] individually in the amount $ 1,350,000 pursuant to the jury verdict. The jury also returned a verdict of no cause as against defendant corporations. On appeal, plaintiff takes issue with the trial court's grant of a directed verdict on two counts in favor of defendant corporations. All parties take issue with the trial court's ruling limiting the amount of damages against defendant corporations. We affirm in part, reverse in part, and remand the case for a trial against defendant corporations.

**[\*2]** This case involved allegations that Wiar, who was plaintiff's accountant and consultant, converted money from plaintiff. Wiar used part of this money to benefit defendant corporations. Wiar's wife held an ownership interest in defendant corporations and Wiar was an officer, director and accountant of these companies. Plaintiff's witnesses testified that the loss of the converted money played a part in plaintiff's filing for bankruptcy in August 1996. As a result of the bankruptcy, plaintiff sought damages in excess of the amount allegedly converted. At trial, plaintiff proceeded against Wiar and defendant companies with claims of statutory conversion, civil conspiracy, and fraud and misrepresentation. The trial court denied defendants' motion for a directed verdict against Wiar but granted defendant companies a directed verdict on the two claims of statutory conversion and civil

---

[1] We will refer to defendant Robert C. Wiar as "Wiar" within this opinion. Moreover, because the remaining defendants have the same legal position, we will refer to those defendants collectively as "defendant corporations."

conspiracy, and limited the amount of damages against defendant companies to $ 285,000 for the claim of fraud and misrepresentation.

Plaintiff first asserts that the trial court improperly granted defendant corporations' motion [2] for a directed verdict on plaintiff's statutory conversion claim. We agree. [*3] We review a trial court's grant of a motion for directed verdict de novo. *Meagher v Wayne State Univ, 222 Mich. App. 700, 708; 565 N.W.2d 401 (1997)*. This Court applies the same test that the trial court applies. *Id*. In deciding a motion for a directed verdict, a court examines all the evidence presented up to the time of the motion to determine whether a question of fact exists. The testimony and all legitimate inferences that may be drawn from the testimony are viewed in a light most favorable to the nonmoving party. *Auto Club Ins Ass'n v General Motors Corp, 217 Mich. App. 594, 603-604; 552 N.W.2d 523 (1996)*.

In this case, although the court believed a question of fact existed as to whether Wiar knew the money had been converted, it ruled that plaintiff presented no evidence from which the jury could conclude that defendant [*4] corporations, for purposes of *MCL 600.2919a*, knew that the money was converted. [3] Plaintiff argues that, because Wiar was an officer of defendant corporations, his knowledge of the conversions may be imputed to defendant corporations. We agree. In *Upjohn Co v New Hampshire Ins Co, 438 Mich. 197, 214; 476 N.W.2d 392 (1991)*, our Supreme Court emphasized that "the combined knowledge of employees may be imputed to a corporation" and cited approvingly the following language from *Gordon Sel-Way, Inc v Spence Bros, Inc, 177 Mich. App. 116, 124-125; 440 N.W.2d 907 (1989)*, rev'd in part on other grounds *438 Mich. 488; 475 N.W.2d 704 (1991)*:

> When a person representing a corporation is doing a thing which is in connection with and pertinent to that part of the corporation business which he is employed, or authorized or selected to do, then that which is learned or done by that person pursuant thereto is in the knowledge of the corporation. The knowledge possessed by a corporation about a particular thing is the sum total of all the knowledge which its officers and agents, [*5] who are authorized and charged with the doing of the particular thing acquire, while acting under and within the scope of their authority. [*Upjohn Co, supra* (quotations omitted).]

This Court, in *Gordon Sel-Way*, set forth the following principles of corporate law:

> A corporation is merely a legal fiction acting through its officers and agents. One of the burdens of acting under the corporate form [*6] is that the law will impute the knowledge of individual officers and employees at a certain level of responsibility to the corporation:
>
> The knowledge of individual officers and employees at a certain level of responsibility will be deemed the knowledge of the corporation; where the level of responsibility begins must be

---

[2]  This motion was brought on behalf of all defendants; however, the trial court denied the motion as against Wiar.

[3]  MCL 600.2919a provides:

> A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. This remedy shall be in addition to any other right or remedy the person may have at law or otherwise.

discerned from the circumstances of each case. Whether employees can be considered managerial employees so as to impute their actions to the corporation does not necessarily hinge on their level in the corporate hierarchy, but depends on the degree of discretion the employee has in making decisions that will ultimately determine corporate policy. [*Gordon Sel-Way, supra at 123-124* (citations omitted).]

Because Wiar was defendant corporations' director, officer and accountant, his knowledge could be imputed to defendant corporations. We conclude that a question of fact existed whether defendant corporations' employees and agents had the collective knowledge to impute defendant corporations. Thus, the trial court's grant of a directed verdict on plaintiff's conversion claim was erroneous.

Further, plaintiff presented evidence that Wiar transferred [*7]  $ 285,000 of plaintiff's money without plaintiff's permission to the accounts of defendant corporations. Defendant corporations had the use of that money for ten to twelve months. Moreover, defendant corporations "repaid" that money without plaintiff's knowledge by issuing a check to the Internal Revenue Service to cover plaintiff's tax arrearages. Other than Wiar's common involvement with the companies, plaintiff neither owed money to, nor engaged in business with, defendant corporations. Considering that defendant corporations then paid the money to the IRS on plaintiff's behalf, a question of fact exists whether defendant corporations knew that the money was converted. Arguably, it is unusual for an entity to retain for almost a year $ 285,000 from a company with which it had no business dealings, and then secretly pay that money to the IRS on the company's behalf. For this reason, the court erred by granting a directed verdict on this count with regard to defendant corporations on plaintiff's conversion count.

Plaintiff also argues that the trial court erred in granting a directed verdict in favor of defendant corporations on the civil conspiracy claim. A civil conspiracy is a [*8]  combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Admiral Ins Co v Columbia Casualty Ins Co, 194 Mich. App. 300, 313; 486 N.W.2d 351 (1992)*. However, a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort. *Early Detection Center, PC v New York Life Ins Co, 157 Mich. App. 618, 632; 403 N.W.2d 830 (1986)*.

Here, the trial court concluded that plaintiff failed to establish the requisite number of people necessary to show a conspiracy. Generally, a corporation cannot conspire with its board of directors, officers, or employees, because a corporation acts only through those persons and conspiring with those persons would be like conspiring with itself. *Blair v Checker Cab Co, 219 Mich. App. 667, 674-675; 558 N.W.2d 439 (1996)*. However, an exception exists where the directors have an independent personal stake in a particular action and, therefore, are actually acting on their own behalf. *Id*. We agree with plaintiff's [*9]  claim that Wiar may have had an independent personal stake in his actions to transfer plaintiff's money to the accounts of defendant corporations. His wife appears to own a fifty-percent interest in defendant corporations. In this respect, the trial court erred in determining that a requisite number of persons was required to show conspiracy.

Plaintiff also asserts there was evidence that defendant corporations conspired with Ronald Lach, who was a loan officer who worked with both plaintiff and defendant corporations. Plaintiff argues that the trial court should not have dismissed the conspiracy count because there was a question of fact that Wiar, Lach and defendant corporations conspired. We agree. Although the trial court pointed out that

2003 Mich. App. LEXIS 1468, *9

Lach was not a defendant to the action, our Supreme Court has ruled that a party is not obligated to bring every member of a conspiracy into a cause of action. "A joint action may be maintained against the conspirators for the damages caused by their wrongful acts, but all the conspirators need not be joined; an action may be maintained against but one." *Brown v Brown, 338 Mich. 492, 504; 61 N.W.2d 656 (1953)* (citation [*10] omitted). Therefore, the fact that Lach was not named as a defendant does not bar plaintiff from demonstrating that Lach conspired with defendant corporations to convert money from plaintiff's account. The evidence in this case raised a question of fact with respect to Lach's involvement in the conspiracy. Given the above, we remand for a trial on plaintiff's conspiracy count as against defendant corporations.

Finally, both parties take issue with the trial court's rulings regarding the limitations of damages. As previously mentioned in this opinion, the trial court allowed only the claim of fraud and misrepresentation to proceed against defendant companies and the court limited the damages to $ 285,000, the amount of the money that Wiar admitted to have taken. The court concluded that any further damages would have been too speculative. However, the court refused to similarly instruct the jury to limit the damages that could be found as against Wiar and it denied Wiar's motion for remittitur after the verdict.

Plaintiff argues that the trial court erred in instructing the jury to only consider damages in the amount of $ 285,000 as against defendant corporations. Here, the court [*11] ruled that, while there was a question of fact as to whether Wiar was responsible for the missing money, penalties, and so forth, there was no evidence offered that the corporate defendants caused such damages. We conclude that the court erred in such determination. As previously discussed in this opinion, the liability of defendant corporations may be imputed from Wiar's actions.

In terms of a party's burden of proof necessary for establishing damages, this Court stated that:

> A party asserting a claim has the burden of proving its damages with reasonable certainty. Although damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision. It is sufficient if a reasonable basis for computation exists, although the result will only be approximate. Where injury to some degree is found, we do not preclude recovery for lack of precise proof of damages. We do the best we can with what we have. [*Berrios v Miles, Inc, 226 Mich. App. 470, 478-479; 574 N.W.2d 677 (1997)* (citations and punctuation marks omitted).]

Here, plaintiff presented significant evidence [*12] on the issue of damages. Plaintiff's witnesses testified that there was approximately $ 600,000 unaccounted for after Wiar left his employment with plaintiff. There was evidence that plaintiff owed federal state and local governments in excess of a million dollars, including penalties, based on Wiar's underpayment of taxes. Moreover, there was testimony that the missing money impacted plaintiff's cash flow, causing the tax penalties and, ultimately, plaintiff's bankruptcy. Two of plaintiff's experts testified that they had received about $ 50,000, and $ 84,000, respectively, for matters related to plaintiff's bankruptcy. Finally, the lost profits that plaintiff encountered as a result of the bankruptcy filing was estimated at $ 2.5 million. Here, the existence of damages can be shown with reasonable certainty, as the jurors could believe plaintiff's witnesses' testimony. While it is true that the exact amount of damages can not be shown "with mathematical precision," this, alone, is not a bar to recovery. *Berrios, supra.* Because defendant

2003 Mich. App. LEXIS 1468, *12

corporations could be found liable for all the expenses which stem from Wiar's actions, the trial court's decision to limit damages **[*13]** as against defendant corporations was erroneous.

In his cross-appeal, Wiar argues that the trial court erred in failing to limit his damages to simply the $ 285,000 which Wiar never disputed that he took. We disagree. There was sufficient evidence from which a jury could conclude that Wiar was responsible for the damages in several million dollars. Wiar also contends that the evidence showed that the "damages" incurred by plaintiff - the tax penalties, the costs of the bankruptcy filing, and the lost profits - were actually based on plaintiff's poor management, as opposed to Wiar's misdeeds. This argument ignores the evidence in this case that showed a causal link between the missing funds for which Wiar was responsible and plaintiff's damages. Because Wiar shows no error, we affirm the lower court's ruling in which it declined to reduce the amount of damages as against Wiar.

Accordingly, we affirm in part, reverse in part and remand for a new trial on plaintiff's conversion and conspiracy claims against defendant corporations consistent with this opinion. [4] We do not retain jurisdiction.

 **[*14]** /s/ Michael J. Talbot

/s/ Janet T. Neff

/s/ Kirsten Frank Kelly

---

[4]  The jury returned a verdict of no cause of action with respect to the claim of fraud and misrepresentation against defendant companies. Plaintiff does not challenge this claim on appeal. Accordingly, the verdict on that claim is not affected by this opinion.