**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

EMILY KOLLARITSCH, SHAYNA GROSS,
JANE ROE 1 and JANE ROE 2,

        Plaintiffs,                Case No.: 1:15-cv-01191

v                              Hon. Paul L. Maloney

MICHIGAN STATE UNIVERSITY BOARD OF
TRUSTEES, DENISE MAYBANK, in her
individual and official capacity as Vice President
for Student Affairs, LOU ANNA SIMON, in her
individual and official capacity as President
of Michigan State University and KAPPA SIGMA
FRATERNITY,

        Defendants.

**DEFENDANT KAPPA SIGMA
FRATERNITY'S BRIEF IN
SUPPORT OF ITS MOTION TO
DISMISS**

Jennifer B. Salvatore (P66640)
Nacht, Roumel & Salvatore, P.C.
Co-Counsel for Plaintiffs
101 N. Main Street, Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
jsalvatore@nactlaw.com

Irwin M. Zalkin (#89957)
Alexander S. Zalkin (#280813)
The Zalkin Law Firm, P.C.
Co-Counsel for Plaintiffs
12555 High Bluff Drive, Suite 301
San Diego, California 92130
(858) 259-3011
irwin@zalkin.com

Robert T. Kent (P71897)
MSU Office of General Counsel
Attorney for MSU Defendants
426 Auditorium Road, Room 494
East Lansing, Michigan 48824-2600
(517) 353-3530

Gary C. Rogers (P29083)
Ryan K. Kauffman (P65357)
Fraser Trebilcock Davis & Dunlap P.C.
Attorneys for Defendant Kappa Sigma
124 West Allegan Street, Suite 1000
Lansing, Michigan 48933
(517) 482-5800
grogers@fraserlawfirm.com
rkauffman@fraserlawfirm.com

Scott L. Mandel (P33453)
Pamela C. Dausman (P64680)
Tyler J. Olney (P80017)
Foster, Swift, Collins & Smith, P.C.
Attorneys for Defendant Delta Psi
313 S. Washington Square
Lansing, Michigan 48933
(517) 371-8185
smadel@fosterswift.com

Fraser Trebilcock LAWYERS

Matthew J. Lund (P48632)
Pepper Hamilton, LLP
Attorneys for MSU Defendants
4000 Town Center, Suite 1800
Southfield, Michigan 48075
(248) 359-7370
lundm@pepperlaw.com

Michael E. Baughman
Pepper Hamilton, LLP
Attorneys for MSU Defendants
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
(215) 981-4897
baughman@pepperlaw.com

## DEFENDANT KAPPA SIGMA FRATERNITY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

**TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUE PRESENTED ................................................................ ii

CONTROLLING AUTHORITY ............................................................................................ iii

INDEX OF AUTHORITIES.................................................................................................. iv

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 1

A.　　Factual Background as alleged in the First Amended Complaint................................. 1

B.　　Factual Allegations regarding Kappa Sigma...................................................................... 2

C.　　Plaintiff Gross's negligence claim against Kappa Sigma................................................ 4

STANDARD OF REVIEW ................................................................................................... 4

LEGAL ARGUMENT ........................................................................................................... 5

A.　　Plaintiff Gross's Negligence Claim against Kappa Sigma Fails for　Lack of Duty.................................................................................................................................. 5

B.　　No Special Relationship Existed between Plaintiff Gross and　Kappa Sigma.............. 9

CONCLUSION ..................................................................................................................... 12

CERTIFICATE OF SERVICE ............................................................................................. 13

## CONCISE STATEMENT OF ISSUE PRESENTED

Whether Plaintiff Shayna Gross's negligence claim against Defendant Kappa Sigma Fraternity should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted because Kappa Sigma owed no legal duty to her to oversee the daily operations of its local chapter, Delta Psi, or to otherwise protect her from the alleged criminal acts of John Doe.

Fraser Trebilcock
LAWYERS

**CONTROLLING AUTHORITY**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

*Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

*Colangelo v. Tau Kappa Epsilon Fraternity*, 205 Mich. App. 129; 517 N.W.2d 289 (1994).

*Graves v. Warner Bros.*, 253 Mich. App. 486; 656 N.W.2d 195 (2002).

*MacDonald v. PKT, Inc.*, 464 Mich. 322; 628 N.W.2d 33 (2001).

## INDEX OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ................ 4, 8, 9, 10

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929
    (2007) ........................................................................................................... 4, 5

*Buczkowski v. McKay*, 441 Mich 96; 490 N.W.2d 330 (1992) ................................... 11

*Case v. Consumers Power Co.*, 463 Mich. 1; 615 N.W.2d 17, 20 (2006) ................................. 6

*Colangelo v. Tau Kappa Epsilon Fraternity*, 205 Mich. App. 129; 517 N.W.2d 289
    (1994) ......................................................................................................... 6, 8

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ........................................... 4

*Graves v. Warner Bros.*, 253 Mich. App. 486, 498; 656 N.W.2d 195, 203 (2002) ............... 6, 9

*Hunley v. Dupont Auto*, 341 F.3d 491, 496 (6th Cir. 2003) ........................................................ 6

*Kubczak v. Chemical Bank & Trust Co.*, 456 Mich 653; 575 N.W.2d 745 (1998) ................... 9

*Lakeland Reg'l Health Sys. v. Walgreens Health Initiatives, Inc.*, 604 F. Supp. 2d
    983, 986 (W.D. Mich 2009) ........................................................................................ 6

*MacDonald v. PKT, Inc.*, 464 Mich 322; 628 NW2d 33 (2001) ............................................. 11

*Shaheen v. Yonts*, 394 Fed. Appx. 224 (6th Cir. 2010) ............................................................. 7

**Rules**

FED. R. CIV. P. 12(B)(6) ................................................................................................. 1, 4, 12

## INTRODUCTION

Defendant Kappa Sigma Fraternity brings this motion under FED. R. CIV. P. 12(B)(6) to dismiss the only claim that has been asserted against it in this matter – Plaintiff Shayna Gross's negligence claim. (See First Amended Complaint, Doc. No. 25, Count IV, ¶¶ 179-183). The claim fails because Plaintiff Gross has not stated a claim against Kappa Sigma for which relief may be granted. Indeed, the claim as asserted in the First Amended Complaint fails for all the same reasons that the claim failed before Plaintiffs amended their complaint. Quite simply, Kappa Sigma owed no legal duty to oversee the daily operations of its local chapters or to otherwise protect Plaintiff Gross from harm caused to her by the alleged criminal acts of John Doe. The factual allegations that Plaintiffs have added to their First Amended Complaint have done absolutely nothing to change that.

## STATEMENT OF FACTS

### A.     Factual Background as alleged in the First Amended Complaint

The following is a summary of the facts as alleged in the First Amended Complaint. By repeating the facts as they have been alleged, Kappa Sigma is neither admitting, nor conceding to, any particular allegation. In fact, Kappa Sigma asserts that many of the allegations in the First Amended Complaint are untrue. Nevertheless, recognizing the standard under which the Court will consider the present motion, Kappa Sigma will restate the relevant facts as they have been pleaded by Plaintiffs.

Ms. Gross was at all relevant times a student at Michigan State University. Kappa Sigma is an international fraternity that operates a local chapter at Michigan State University ("MSU"). (Doc. No. 25, ¶ 6). Kappa Sigma's local chapter at MSU is Defendant Delta Psi. (*Id.*, ¶ 7). For all times relevant to the First Amended Complaint, John Doe was a member of

Delta Psi.   (*Id.*, ¶ 137).   According to the First Amended Complaint, Ms. Gross was acquainted and friendly with Mr. Doe prior to the alleged incident.  (*Id.*, ¶ 138).

The alleged incident with regard to Plaintiff Gross occurred in February, 2013.  (*Id.*, ¶ 140).  According to the First Amended Complaint, Mr. Doe asked Ms. Gross via text message if she wanted to hang out with him at the Delta Psi fraternity house.  (*Id.*)   Plaintiff Gross agreed to meet Mr. Doe and that evening she and another friend went the fraternity house, where Plaintiff Gross consumed alcoholic drinks that were given to her by Mr. Doe.  (*Id.*, ¶ 141).   The next day, Mr. Doe informed Plaintiff Gross that they had engaged in sexual intercourse; however, Plaintiff Gross had "little to no recollection of engaging in sexual intercourse with Mr. Doe."  (*Id.*, ¶¶ 142).

On February 12, 2014, approximately one year after the alleged incident, Plaintiff Gross reported the sexual assault to the MSU Office of Inclusion.   According to the First Amended Complaint, the report was made after Mr. Doe had already been accused of sexually assaulting Plaintiff Emily Kollaritsch and another unnamed student.  (*Id.*, ¶ 144).

**B.      Factual Allegations regarding Kappa Sigma**

In the First Amended Complaint, Plaintiffs have added a number of allegations regarding the structure and governance of Kappa Sigma that were not included in the original complaint.  Plaintiffs allege that Kappa Sigma is governed according to its constitution and by-laws.   (*Id.*, ¶ 110).   Plaintiffs further allege that Kappa Sigma is "a hierarchical organization" and is governed by its Supreme Executive Committee, which is empowered to make rules and regulations for the fraternity. (*Id.*, ¶¶ 111-113).   According to the First Amended Complaint, the Supreme Executive Committee has the authority to impose

2

sanctions against local chapters as it deems appropriate, up to, and including, expulsion of a local chapter from the Kappa Sigma Fraternity.  (*Id.*, ¶ 115).

The First Amended Complaint also contends that Kappa Sigma Fraternity is divided into Districts, and that for each District, the Supreme Executive Committee appoints a District Grand Master, who is responsible for visiting each local chapter within his district.  (*Id.*, ¶¶ 116-117).   The District Grand Master is also required to submit a report to the Supreme Executive Committee regarding the conditions of a local chapter, and the Supreme Executive Committee is entitled to give the District Grand Master authority to remove some or all of the local chapter's officers.   (*Id.*, ¶¶ 117-118).

The First Amended Complaint also contains a number of allegations regarding the obligation of members of the local chapters of Kappa Sigma to abide by the fraternity's Code of Conduct.  (*Id.*, ¶ 120-125).  Plaintiffs allege that pursuant to the Code of Conduct, and the Standards of Conduct contained therein, members of the local chapters are forbidden from providing alcohol to anybody that is under the legal drinking age.  (*Id.*, ¶ 122).   Under the Standards of Conduct, members of local chapters are also encouraged to engage in educational programs related to alcohol and other drug consumption.  (*Id.*, ¶ 125).

With regard to the local chapters, the First Amended Complaint contends that each local chapter is entitled to acquire property in its name, which is held in Trust for the use and operation of the local chapter, and for the use of the Kappa Sigma Fraternity.  (*Id.*, ¶ 126). Each local chapter is self-governed and entitled to make its own by-laws, orders, and regulations, which must be consistent with Kappa Sigma's constitution and by-laws.  (*Id.*, ¶ 128).

### C.      Plaintiff Gross's negligence claim against Kappa Sigma

Plaintiff Gross claims Kappa Sigma negligently supervised its local chapter, Defendant Delta Psi, and that it failed to protect her from Delta Psi's member, John Doe.  The claim, which is stated in Count IV of the First Amended Complaint, generally alleges that Kappa Sigma had a duty to protect Plaintiff Gross as an "invitee," and that Plaintiff Gross "temporarily entrusted" herself to Kappa Sigma.  (*Id.*, ¶ 180).  Plaintiffs also allege that Kappa Sigma knew or reasonably should have known of Mr. Doe's "dangerous and exploitive propensities" (*Id.*, ¶ 181), and that Kappa Sigma breached its duty of care to Plaintiff Gross by "allowing" John Doe to come into contact with Plaintiff Gross, by failing to supervise John Doe, and by failing to warn Plaintiff Gross that John Doe posed a risk of sexually assaulting her.  (*Id.*, ¶ 182).

### STANDARD OF REVIEW

The pleading standard necessary to survive a Rule 12(b)(6) motion is set forth in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   In *Twombly*, the Supreme Court repudiated the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), holding that the appropriate standard is as follows:

> While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than lables and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

*Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).

Stated otherwise, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting

*Twombly*, 550 U.S., at 570, 127 S.Ct. 1955). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 566 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. However, where the well-pleaded facts do not permit the court to infer more than the "mere possibility of misconduct," the complaint has not shown, that the pleader is entitled to relief. *Id*. at 679.

## LEGAL ARGUMENT

### A.      Plaintiff Gross's Negligence Claim against Kappa Sigma Fails for Lack of Duty

Plaintiff Gross's negligence claim against Kappa Sigma is primarily based on her erroneous assertion that Kappa Sigma owed her some type of vague and undefined duty of care to supervise its local chapter, Defendant Delta Psi, and to control the actions of John Doe. Plaintiff Gross also seems to assert that Kappa Sigma was negligent in failing to warn her that Mr. Doe posed a risk to her, that it failed to investigate accusations that had been made against Mr. Doe, and/or by allowing Mr. Doe to hold himself out as being a trustworthy member of Kappa Sigma's local chapter, Delta Psi. None of these allegations allow the First Amended Complaint to survive Kappa Sigma's motion to dismiss.

Regardless of how Plaintiff Gross attempts to frame her negligence claim against Kappa Sigma, she must establish the following elements: (1) that the defendant owned her a duty; (2) that the defendant breached that duty; (3) that the defendant's breach caused her

injury; and (4) that she suffered damages.  See *Hunley v. Dupont Auto*, 341 F.3d 491, 496 (6th

Cir. 2003) and *Case v. Consumers Power Co.*, 463 Mich. 1; 615 N.W.2d 17, 20 (2006).   Duty

is an essential element of any negligence action, and when a duty does not exist, there is no

liability against the defendant.  See *Graves v. Warner Bros.*, 253 Mich. App. 486, 498; 656

N.W.2d 195, 203 (2002).

Under Michigan law, a national fraternity owes "no duty to supervise the local

chapter's actions for protection of third parties."  *Colangelo v. Tau Kappa Epsilon Fraternity*,

205 Mich. App. 129, 136; 517 N.W.2d 289 (1994).[1]  In *Colangelo*, the plaintiffs brought a

wrongful death action against a national fraternity after their decedent was struck and killed

by a vehicle while walking home from a party at the local chapter.  *Id.* at 130.   The driver of

the vehicle, who had also attended the party, was intoxicated at the time of the accident.  *Id.*

The plaintiffs alleged that the national fraternity had been negligent in supervising the local

chapter. *Id.* at 131.

In in affirming the trial court's order granting summary disposition to the national

fraternity, Michigan Court of Appeals looked to several factors to determine that the national

fraternity was under no duty to supervise the day-to-day activities of the local chapter.  *Id.* at

136.  Specifically, the court explained that the "ability of the national fraternity to foresee that

a person of insufficient age to drink legally would consume alcoholic beverages at a party

hosted by the local chapter, become intoxicated, and then drive away from the party and

---

[1] Federal courts apply Michigan law to tort claims that arise in Michigan.  *Lakeland Reg'l Health Sys. v. Walgreens Health Initiatives, Inc*., 604 F. Supp. 2d 983, 986 (W.D. Mich 2009).  In applying state law, federal courts "anticipate how the relevant highest court would rule in the case" and are "bound by controlling decisions of that court." *Id*. at 988.  Where the state's highest court has not ruled on the issue, federal courts will look to the decisions of the state's intermediate appellate courts and will accord those decisions precedential value.  *Id*. at 988-989.

injure the plaintiff's decedent is questionable." *Id.* at 133.   Further, the Court noted that the connection between the injury and the national fraternity's conduct was too attenuated to find that a duty existed. *Id.* at 134.  Given the long chain of events, which included intervening bad conduct by the local chapter in its failure to prevent minors from drinking, the defendant driver who illegally operated a vehicle while under the influence, and the circumstances of the accident itself, the court found that the national fraternity was "the least blameworthy party." *Id.*  Finally, the court weighed the burdens and consequences of imposing such a duty, finding that "the purpose of organizations like the national fraternity would fundamentally change" if they were forced to supervise the daily activities of every local chapter. *Id.* at 135.

Michigan's appellate courts are not alone in holding that a national fraternity owes no duty to oversee the day-to-day operations of its local chapters.  See e.g., *Shaheen v. Yonts*, 394 Fed. Appx. 224 (6th Cir. 2010) (and cases cited therein).  In *Shaheen*, the plaintiff's decedent was killed by an intoxicated driver, a member of the national fraternity's local chapter, who had just left a party at the local chapter's fraternity house. *Id.* at 225.  The plaintiff brought a negligence action against the national fraternity, alleging that it failed to adequately supervise the local chapter. *Id.*  The Sixth Circuit, however, disagreed and applying Kentucky law, affirmed the district court's order granting summary judgment to all defendants, including the national fraternity. *Id.* at 230 (holding that "[w]ithout a physical presence at the local chapter, the imposition of a duty [on the national fraternity] to supervise and or control is illogical and untenable.").

Like the plaintiffs in the above-discussed cases, Plaintiff Gross in the case at bar seeks to impose some type of vague and undefined legal duty on a national fraternity to control its local chapters and to protect third parties from any criminal activity occurring on, or arising

7

out of, the local chapter's property.  In the First Amended Complaint, Plaintiff Gross erroneously claims that Kappa Sigma had a legal duty to "adequately supervise" John Doe, to warn Plaintiff that Mr.  Doe posed a risk of sexual assault, to enforce its Code of Conduct more strictly, and to prevent members of the local chapter from providing alcoholic drinks to individuals under the drinking age.  (Doc. No. 25, ¶ 182).   However, as the *Colangelo* Court held, a national fraternity like Kappa Sigma owes no duty to Ms. Gross to supervise its local chapter's day-to-day operations, or to control the conduct of its local chapter's members.  Any connection between the injury the Plaintiff Gross suffered and Kappa Sigma's conduct is far too attenuated to find that a duty exists.  The harm to Plaintiff Gross was allegedly caused by the illegal actions of John Doe.  Kappa Sigma did not participate in any of the decisions, and did not contribute to any of the circumstances, that led to Plaintiff Gross being assaulted at the local chapter.

While the First Amended Complaint alleges that Kappa Sigma "knew or reasonably should have known" of Mr. Doe's "dangerous and exploitive propensities," it offers nothing more than bare assertions to support that claim.  The First Amended Complaint fails to provide any information to support the notion that anyone at Kappa Sigma could have possibly known that Mr. Doe might sexually assault Ms. Gross.  Certainly, the allegations that Kappa Sigma had, through its Supreme Executive Committee and/or its District Grand Master, the authority to discipline its local chapters (Doc. No. 25, ¶¶ 110-118) does nothing to "state a claim to relief that is plausible on its face" See *Ashcroft*, 566 U.S. at 678.  The allegations do not suggest that anyone at Kappa Sigma actually had any relevant information regarding any of the events leading up to John Doe's alleged sexual assault of Plaintiff Gross.  Instead, the facts as stated in the First Amended Complaint, suggest, at the very most, the

8

"mere possibility of misconduct;" accordingly, the First Amended Complaint has not shown that Plaintiff Gross is entitled to relief.   *Id.* at 679.

> **B.      No Special Relationship Existed between Plaintiff Gross and Kappa Sigma**

It is well settled that there is no duty to protect another person from the criminal acts of a third party in the absence of a special relationship.   *Graves*, 235 Mich App at 493. Perhaps recognizing this, Plaintiff Gross alleges, without alleging any facts to support the conclusion, that she enjoyed a "special relationship" with Kappa Sigma.   However, these types of "[t]hreadbare recitals of the elements of a cause of action," which are supported only by conclusory statements, are exactly the types of allegations that fail to state a claim upon which relief may be granted.   See *Ashcroft*, 566 U.S. at 678.

In particular, Plaintiff Gross contends that she was Kappa Sigma's "invitee" when she attended the party at the Delta Psi fraternity house on the night John Doe allegedly assaulted her.   (Doc. No. 25, ¶ 180).   However, the First Amended Complaint does not allege that Kappa Sigma was the owner of the premises at issue.   In fact, Plaintiff Gross alleges just the opposite, stating that "[e]ach local chapter is entitled to acquire property" and that local chapters hold property "in Trust for the use and operation of [that] local chapter . . . ."   (*Id.*, ¶ 126).   Plaintiff Gross also contends that "[e]ach local chapter is self-governed" and that each local chapter makes its own by-laws, orders and regulations, as long as they are consistent with Kappa Sigma's constitution and by-laws.   (*Id.*, ¶ 128).   Simply put, because Kappa Sigma did not own, possess, or control the Delta Psi fraternity house, it cannot possibly owe Plaintiff Gross any duty under a theory of premises liability.   See *Kubczak v. Chemical Bank & Trust Co.*, 456 Mich 653, 664; 575 N.W.2d 745, 749 (1998) (holding that where the defendant did

9

not exercise the requisite dominion and control over the subject property, that defendant cannot be considered a "possessor" for purposes of premises liability.)

There are also no facts supporting Plaintiff Gross's untenable assertion that she enjoyed a special relationship with Kappa Sigma because she "temporarily entrusted" her care to Kappa Sigma and/or because Kappa Sigma "voluntarily accepted the entrusted care of [her]" (*Id.*, ¶ 180).   Again, the allegations are nothing more than the barest of assertions – unfounded legal conclusions presented under the guise of an asserted fact.   Absolutely nothing in the First Amended Complaint even remotely supports the conclusion that Plaintiff Gross entrusted herself to the national fraternity, Kappa Sigma, or that Kappa Sigma somehow voluntarily accepted that entrustment.   Rather, Plaintiff Gross contends that she was the one who was "friendly" with John Doe, and that she agreed to meet him at the Delta Psi fraternity house to "hang out."   (*Id.*, ¶ 140).   It is not "facial plausibility" for Plaintiff to contend that she agreed to meet Mr. Doe and/or agreed to take alcoholic drinks from him because she had entrusted her safety to the national fraternity, Kappa Sigma.   *Ashcroft*, 566 U.S. at 678.

The allegations that Kappa Sigma should have foreseen that members of its local chapter might give alcohol to individuals under the legal drinking age and/or engage in criminal assaults also do not support Plaintiff's claim that she enjoyed a special relationship with Kappa Sigma.   The First Amended Complaint contends that Kappa Sigma should have known about a variety of "widely publicized and available information, studies, and reports" regarding the risks associated with underage drinking at fraternities on campuses across the country.   (Doc. No. 25, ¶ 135).   Plaintiffs also allege that through its Code of Conduct and Standards of Conduct, Kappa Sigma forbids members of the local chapters from providing

10

alcohol to anybody that is under the legal drinking age, and that Kappa Sigma further encourages members of its local chapters to engaged in educational programs related to alcohol and drug consumption. (*Id.*, ¶¶ 122, 125). None of these allegations, however, support Plaintiff Gross's legal conclusion that she enjoyed a special relationship with Kappa Sigma and/or that Kappa Sigma otherwise owed her a duty of care.

"[T]he mere fact that an event may be foreseeable does not impose a duty upon the defendant to take some kind of action accordingly." *Buczkowski v. McKay*, 441 Mich 96, 101; 490 N.W.2d 330, 333 (1992). In particular, the Michigan Supreme Court has noted that "criminal activity," such as Mr. Doe's alleged sexual assault on Plaintiff Gross, is "invariably foreseeable everywhere," precisely because it is "irrational and unpredictable." *MacDonald v. PKT, Inc.*, 464 Mich 322, 335; 628 NW2d 33 (2001). Underage drinking on college campuses is surely just a foreseeable. However, foreseeability alone does not create a duty even in the owner of the property on which the criminal activity occurs. *Id.* Consequently, foreseeability alone cannot possibly create a legal duty in Kappa Sigma, which did not own or control the Delta Psi fraternity house, and which did not otherwise have any type of special relationship with Plaintiff Gross.

11

## CONCLUSION

For the foregoing reasons, Defendant Kappa Sigma Fraternity respectfully requests that this Honorable Court GRANT its Motion to Dismiss pursuant to FED. R. CIV. P. 12(B)(6) and dismiss Count IV of the First Amended Complaint with prejudice.

*Respectfully submitted*,

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendant Kappa Sigma
Fraternity

Dated: March 3, 2016          By:   /s/ *Ryan K. Kauffman*
                                    Gary C. Rogers (P29083)
                                    Ryan K. Kauffman (P65357)
                                    124 W. Allegan, Suite 1000
                                    Lansing, Michigan  48933
                                    (517) 482-5800
                                    e-mail: rkauffman@fraserlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Jennifer B. Salvatore, Irwin M. Zalkin, Robert T. Kent, Scott L. Mandel, Michael E. Baughman and Matthew J. Lund served electronically.

**FRASER TREBILCOCK DAVIS & DUNLAP, P.C.**
Attorneys for Defendant Kappa Sigma
Fraternity

Dated: March 3, 2016        By:   /s/ *Ryan K. Kauffman*
               Gary C. Rogers (P29083)
               Ryan K. Kauffman (P65357)
               124 W. Allegan, Suite 1000
               Lansing, Michigan 48933
               (517) 482-5800
               e-mail: rkauffman@fraserlawfirm.com

13