UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILY KOLLARITSCH, SHAYNA GROSS,   )
JANE ROE 1 and JANE ROE 2,         )
                    Plaintiffs,    )
                                   )        No. 1:15-cv-1191
-v-                                )
                                   )        Honorable Paul L. Maloney
MICHIGAN STATE UNIVERSITY BOARD OF )
TRUSTEES, et al.                   )
                    Defendants.    )
_____)

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiffs are four women who allege they were sexually harassed or assaulted by other students while they were students at Michigan State University (MSU).  Each plaintiff alleges she reported the assault to the MSU, which did not adequately respond.  Plaintiffs assert claims for violations of Title IX and Michigan's Elliott-Larsen Civil Rights Act (ELCRA).  Through § 1983, Plaintiffs also assert claims for violations of their constitutional rights to Due Process and Equal Protection.[1]  Defendants filed a motion to dismiss.  (ECF No. 28.)  The Court held a hearing on the motion.

The motion will be granted in part and denied in part.  Plaintiffs have conceded several of the claims, including the violations of Due Process and violations of the ELCRA.  The Title IX claim brought by Jane Roe 2 will be dismissed, as the allegations in the

---

[1]   Plaintiffs also asserted a claim for negligence against a campus fraternity and the national chapter.  Those claims, and the campus fraternity national chapter, have been dismissed.  (ECF No. 48.)

complaint do not establish deliberate indifference.  Plaintiffs' Equal Protection claim against MSU Board of Trustees has been withdrawn, and the motion will be granted for the Equal Protection claims against Defendants Simon and Youatt.  The complaint does not allege sufficient facts to show how those individuals violated the constitutional rights of any of the plaintiffs.

## I.

At the outset, the Court must clarify the individual defendants in this case.  In the caption for the initial complaint, Plaintiffs named the Michigan State University Board of Trustees (Trustees); Lou Anna Simon, the president of the university; and Denise Maybank, the vice president of student affairs.  With leave of the Court, Plaintiffs filed an amended complaint, which is the controlling pleading.  (ECF No. 25.)  Plaintiffs did not alter the caption, but did add defendants.  In the "Parties and Jurisdiction" portion of the complaint, Plaintiffs named Trustees (Compl. ¶ 1), Maybank (*id.* ¶ 2), and Simon (*id.* ¶ 3).  As a defendant, Plaintiffs added June Pierce Youatt, the acting Provost, or the Provost and Executive Vice President for Academic Affairs.  (*Id.* ¶ 4.)  Plaintiffs also added Paulette Granberry Russell, who at "all times relevant was MSU's appointed Title IX Coordinator." (*Id.* ¶ 5.)  Plaintiffs have not requested any additional summonses since their initial complaint was filed.  Defendants Youatt and Russell made appearances in this lawsuit when the motion to dismiss was filed on their behalf.

In the portion of the complaint where Plaintiffs identify and outline their causes of action, Plaintiffs list the defendants against which each claim is brought as part of the heading and also identify the defendants within the claim itself.  Count 1 is Plaintiffs' claim for

violations of Title IX, and is brought against Defendant Trustees only.   (Compl. PageID.257–58.)   Count 3 is Plaintiffs' claim for violations of the ELCRA, and is brought against Defendant Trustees only.   (*Id.* PageID. 359–60.)

The confusion about the individual defendants arises in Count 2, Plaintiffs' constitutional claims.   (Compl. PageID.258–59.)   Plaintiffs name as the defendants for this count the Trustees, Maybank, Simon and Youatt.   Plaintiffs also name as a defendant Amanda Garcia-Williams.   In paragraph 32 of the complaint, Plaintiffs identify Garcia-Williams as MSU's Title IX Coordinator, the same position held by Russell "at all times relevant."   Then, in paragraph 84, Plaintiffs describe Russell as the Senior Advisor to the President for Diversity and as the Director of the Office of Inclusion and Intercultural Initiatives.   Plaintiffs also describe Russell as Garcia-Williams's supervisor.   (*Id.* ¶ 84.) Garcia-Williams is mentioned in the factual allegations for each of the individual plaintiff's claims.

Based on this brief summary, the Court reaches two conclusions.   First, Plaintiffs have not asserted a claim against Defendant Paulette Russell.   Plaintiffs do not identify Russell as a defendant for any of their counts.[2]   There is no claim for which Russell must file an answer. The confusion about Russell's title does not affect this conclusion.   Second, Garcia-Williams is not currently a named defendant in this lawsuit.   Plaintiffs did not identify Garcia-Williams as a defendant in the "Parties and Jurisdiction" portion of their complaint.   Plaintiffs have

---

[2]      Russell is mentioned only in paragraphs 5, 84 and 85.   Paragraphs 5 and 84 contain conflicting descriptions of Russell's role at MSU.   At best, paragraphs 84 and 85 allege that Russell was a bad supervisor.   Plaintiffs allege that the mother of Jane Roe 1 complained to Russell about the manner in which the investigation of her daughter's complaint was handled and Russell did not look into the matter or call the mother back.

never requested a summons for Garcia-Williams.   Garcia-Williams has not made an appearance in this lawsuit.   This Court does not currently have personal jurisdiction over Garcia-Williams.

## II.

Defendant filed a motion to dismiss, relying on Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Under the notice pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief.   Fed. R. Civ. P. 8(a)(2); *see Thompson v. Bank of America, N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (holding that to survive a Rule 12(b)(6) motion, the complaint "must comply with the pleading requirements of Rule 8(a).").   The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint.   *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss, "[t]he complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted).   The plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level.   *Twombly*, 550 U.S. at 555. And the claim for relief must be plausible on its face.   *Id.* at 570.   "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform,* 648 F.3d at 369. Naked assertions without further factual enhancement, formulaic recitations of the elements of a cause of action, and mere labels and conclusions will be insufficient for a pleading to state a plausible claim. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citations omitted).

III.

For this motion, all well-pled factual allegations are assumed to be true. Plaintiffs describe the events giving rise to the claims brought by all four students.

A.  Plaintiff Kollaritsch

John Doe attempted to rape Plaintiff Kollaritsch in his dormitory room in October 2011. (Compl. ¶ 28.) On October 15, John Doe sexually assaulted Kollaritsch in the stands at an MSU football game. (*Id.* ¶ 29.) Kollaritsch reported the assaults to the MSU Police on January 30, 2012. (*Id.* ¶ 30.) On February 3, Kollaritsch met with Garcia-Williams to formally commence an investigation against John Doe by MSU. (*Id.* ¶ 32.) While the investigation was occurring, MSU did not restrict John Doe or accommodate Kollaritsch so that she would not encounter John Doe. (*Id.* ¶ 33.) Sometime in August, some 200 days later, Kollaritsch received the Investigation Report from MSU. (*Id.* ¶ 37.) The report

concluded that John Doe violated the MSU Sexual Harassment Policy, but did not identify the specific policies or provisions that were violated.  (*Id.* ¶ 39.)  The report did not conclude that John Doe sexually assaulted Kollaritsch.  John Doe accepted responsibility (*id.* ¶ 41), and, on November 13, 2012, was placed on probationary status, and was issued a no-contact order (*id.* ¶ 44). Garcia-Williams did not inform Kollaritsch that she had a right to appeal the sanction.  (*Id.* ¶ 45.)

John Doe thereafter violated the no-contact order and began stalking, harassing, and otherwise intimidating Kollaritsch.  (Compl. ¶¶ 47-48.)  After reporting his conduct in February, on March 11, 2013, Kollaritsch filed a formal complaint with MSU about John Doe's retaliatory harassment.  (*Id.* 50 and 53.)  On March 13, Kollaritsch sought a Personal Protection Order against John Doe in the East Lansing District Court, which was issued the next day.  (*Id.* ¶ 55.)  In May 2013, Garcia-Williams issued a report concluding that John Doe had not retaliated against Kollaritsch and had not further violated MSU's Code of Conduct.  (*Id.* ¶ 58.)  Kollaritsch was not informed that she could appeal the conclusions. (*Id.* ¶ 59.)  Between June and August, Kollaritsch pressed the matter with MSU, complaining that the investigation was inadequate.  (*Id.* ¶¶ 60-65.)

## B.  Plaintiff Jane Roe 1

John Doe 2 sexually assaulted Jane Roe 1 in November 2013.  (Compl. ¶ 70.)  The assault occurred on the MSU campus.  (*Id.*)  Jane Roe 1 "immediately" reported the assault to the MSU Police and also went to Sparrow Clinton Hospital to have a Sexual Assault Nurse Examiner (SANE) perform an exam.  (*Id.* ¶ 72.)  In February 2014, Jane Roe 1 filed a formal complaint with Garcia-Williams, who promised to interview two witnesses before Spring

Break.  (*Id.* ¶ 73.)  Jane Roe 1 contacted Garcia-Williams in March and April.  (*Id.* ¶¶ 73 and 74.)  Both times she was told that MSU was waiting for the SANE report.  (*Id.*)  In late April and again in May, Jane Roe 1's mother contacted MSU.  (*Id.* ¶ 75 and 76.)  Both times she was told that MSU was still waiting for the SANE report.  (*Id.*)  In April, the mother was told that John Doe 2 had not yet been interviewed.  (*Id.* ¶ 75.)  After the telephone call in May, the mother called Sparrow Hospital and was told that the SANE report had been sent to MSU on March 14, 2014.  (*Id.* ¶ 27.)

Jane Roe 1's mother made several attempts over the next few months to speak with Garcia-Williams and her supervisor, Defendant Russell, with varying success.  (Compl. ¶¶ 77-85.)  In November, MSU informed Jane Roe 1 that it had completed its investigation and that the report was available for Jane Roe 1 to pick up.  (*Id.* ¶ 86.)  Jane Roe 1 did not respond.  (*Id.*)  On December 15, 2014, Garcia-Williams emailed Jane Roe 1 and informed her that MSU had concluded there was insufficient evidence to find that John Doe 2 violated MSU's Sexual Harassment Policy.  (*Id.* ¶ 87.)

## C.  Plaintiff Jane Roe 2

John Doe 3 sexually assaulted Jane Roe 2 on August 23, 2013.  (Compl. ¶ 92.)  Jane Roe 2 reported her assault on August 26.  (*Id.* ¶ 93.)  Garcia-Williams interviewed John Doe 3 on September 3.  (*Id.* ¶ 94.)  On December 10, 2013 MSU issued a report finding John Doe 3 violated MSU's Student Code of Conduct.  (*Id.* ¶ 95.)  John Doe 3 was expelled on January 29, 2014, after a hearing.  (*Id.* ¶ 96.)  John Doe 3 appealed his suspension, which was upheld by Defendant Maybank.  (*Id.* ¶ 97.)

While the investigation and appeals occurred, John Doe 3 was able to complete the semester, and he subsequently transferred to another school. (Compl. ¶ 104.) John Doe 3 was allowed to remain on campus throughout the investigation and appeal, subject to a personal protection order. (*Id.* ¶ 105.) Nevertheless, Jane Roe 2 did encounter John Doe 3 on at least one occasion. (*Id.* ¶ 106.) On May 5, 2014, MSU contacted Jane Roe 2 to let her know that John Doe 3 received permission to return to campus on May 10 to attend a graduation ceremony. (*Id.* ¶ 98.) Jane Roe 2 was not consulted about the decision. (*Id.* ¶ 99.)

### D.  Plaintiff Gross

Plaintiff Shayna Gross was an acquaintance of, and was friendly with, John Doe. (Compl. ¶ 139.) In February 2013, John Doe invited Gross to hang out at the Kappa Sigma fraternity house. (*Id.* ¶ 140.) Gross made clear to John Doe that they would be hanging out only as friends. (*Id.*) Gross and a friend went together to the fraternity house that night, where John Doe served Gross alcoholic drinks. (*Id.* ¶ 141.) Gross can only remember flashes of the evening. (*Id.* ¶ 142.) The next morning, John Doe informed Gross that they had sex in the fraternity house, in her dorm room, and also in his dorm room. (*Id.*) Approximately one year later, Gross reported the sexual assault to MSU on February 12, 2014. (*Id.* ¶ 144.) Gross contacted Garcia-Williams multiple times for status updates about the investigation, and never received a timely response. (*Id.* ¶ 146.) MSU completed the investigation on October 14, 2014, concluding that John Doe had sexually assaulted Gross. (*Id.* ¶ 147.) A hearing occurred in January 2015, and John Doe was expelled in February. (*Id.* ¶¶ 150-51.)

John Doe filed two appeals.  His first appeal was denied on March 2, 2015, by MSU's appellate board.  (Compl. ¶ 153.)  After he filed a second appeal, Defendant Maybank informed Gross that MSU's conclusions would be set aside and that an outside law firm would be hired to conduct a new investigation.  (*Id.* ¶ 155.)  The law firm issued a report on May 13, 2015.  (*Id.* ¶ 157.)  The report concluded that John Doe and Gross had sexual relations that night, but could not conclude that the relations were non-consensual.  (*Id.*)  Gross appealed the decision, which was denied.  (*Id.* ¶¶ 159-60.)  Throughout the investigation and appeals, John Doe was allowed to remain on campus, without restrictions.  (*Id.* ¶¶ 149 and 161.)

For each plaintiff, Plaintiffs allege Defendants' reactions to victims' reports were inadequate, leaving each plaintiff vulnerable on campus and causing deprivation of her educational opportunities.  (Comp. ¶¶ 66–68 Kollaritsch; ¶¶ 89–91 Jane Roe 1; ¶¶ 107–09 Jane Roe 2; ¶¶ 163–65 Gross.)

IV.

Defendants argue Plaintiffs' Title IX claim should be dismissed.  Defendants argue Plaintiffs have not pleaded sufficient facts to show deliberate indifference by the institution, MSU.  Defendants also argue that complaint does not established how each plaintiff suffered harassment as the result of deliberate indifference.

Title IX prohibits sex discrimination in education programs that receive federal funding.  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

Title IX is enforceable through a private right of action. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)). For a Title IX claim, the plaintiff must plead facts demonstrating deliberate indifference by the recipient of federal funding. *Id.* at 290. Deliberate indifference occurs when the recipient's response to known acts of sexual harassment, or lack thereof, "is clearly unreasonable in light of the known circumstances." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 648 (1999); *see Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 367-68 (6th Cir. 2005). Deliberate indifference does not occur through a collection of sloppy, or even reckless oversights; it arises from obvious indifference to sexual harassment. *See Doe v. Claiborne Cty., Tennessee*, 103 F.3d 495, 508 (6th Cir. 1996). The standard for deliberate indifference is a "high bar," and is not a "mere reasonableness" standard. *Stiles ex rel. D.S. v. Grainger Cty., Tennessee*, 819 F.3d 834, 848 (6th Cir. 2016). Title IX does not require recipients of federal funding to purge their institutions of actionable sexual harassment and does not require the institutions to undertake any particular disciplinary sanctions. *Id.* And, Title IX does not give the victim a right to demand a particular remedy to the harassment. *Id.* Under the deliberate indifference standard, courts should not second-guess an institution's disciplinary decisions. *Id.* (citing *Davis*, 526 U.S. at 648).

*Gebser* involved sexual harassment of a high school student by a teacher. The issue was whether the school district could be held liable for damages. The Supreme Court explained the notice requirement and the necessary response by officials. Where the plaintiff's claim does not involve an official policy, "we hold that a damages remedy will not

lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." *Gebser*, 524 U.S. at 290.   The response must amount to deliberate indifference to discrimination. *Id.*

The following year, the Supreme Court revisited Title IX in *Davis*.  The case was brought on behalf of a fifth-grade girl who had been sexually harassed by another student in her class.  The Court considered whether the school board could be held liable for peer harassment.  The Court held recipients of federal funding may be held liable under Title IX only when (1) they are deliberately indifferent to sexual harassment, (2) of which they have actual knowledge, (3) that is so severe, pervasive, and objectively offensive that it deprives the victims of access to the educational opportunities or benefits provided by the school.  *Davis*, 526 U.S. 560; *see Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). The funding recipient's deliberate indifference must cause the deprivation of educational opportunities and benefits.  *Davis*, 526 U.S. at 645.  Liability for deliberate indifference arises in circumstances where the funding recipient "exercises substantial control over both the harasser and the context in which the known harassment occurs.  Only then can the recipient be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the recipient's programs." *Id.*

The institution's response to knowledge of sexual harassment must be reasonable in light of the known circumstances.  *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000); *see Davis*, 526 U.S. at 648 (explaining that deliberate indifference arises only

when the funding recipient's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."). The promptness of the institution's response, or lack thereof, may be a consideration in determining the reasonableness of the response. *See Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 761 (2d Cir. 1998) (finding no error in the jury instructions for a Title IX case when the court declined to instruct the jury that the school district had to take "prompt" remedial action, reasoning that, implicit in the concept of an appropriate response was that the response must be prompt) *abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009).

Emphasizing the actual knowledge element of a Title IX claim, courts have rejected use of agency and negligence principles. The *Davis* Court summarized the holding in *Gebser*: agency principles cannot be used to impute liability to the district for misconduct by its teachers. *Davis*, 526 U.S. at 642. *Davis* also held that the "should have known" standard for negligence actions did not apply, the institution must have actual knowledge of the harassment. *Id*; *Pahssen*, 668 F.3d at 365 ("Negligence, however, does not establish deliberate indifference.").

### A.  Plaintiff Kollaritsch

The facts alleged in the complaint are sufficient to state a plausible Title IX claim based on MSU's response to Kollaritsch's circumstances.

Defendants do not challenge their knowledge of the alleged sexual harassment. Plaintiffs allege Kollaritsch reported the assaults to MSU police, MSU's Office of Inclusion,

and to an official with MSU, Garcia-Williams, for the purpose of starting an investigation. (Compl. ¶¶ 30–32.)

Plaintiffs' allegations are sufficient to plead the deliberate indifference element. Taken as true, the allegations establish that Defendants' response was unreasonable in light of the known circumstances. MSU's investigation took more than six months. During the investigation, MSU did not put in place any accommodations to prevent Kollaritsch from encountering her harasser. The final report did not accurately describe the allege assaults and Kollaritsch was not informed of her right to appeal the sanctions that were imposed.

A no-contact order was imposed on John Doe as part of the sanctions against him. He then violated the no-contact order on at least nine occasions, which Kollaritsch reported to MSU. MSU did not provide any interim safety measures after Kollaritsch reported the violations of the no-contact order. Kollaritsch was not permitted to be involved in the retaliation investigation, no hearing was held, and when MSU concluded its investigation, Kollaritsch was again was not informed of her ability to file an appeal.

Finally, Plaintiffs have alleged sufficient facts to show that MSU's deliberate indifference deprived Kollaritsch of educational opportunities. Here, the Court focuses on what occurred after Kollaritsch made her initial report. Because she feared for her safety, Kollaritsch took leaves of absence from MSU and did not take classes. (Compl. ¶ 66.)

## B. Plaintiff Jane Roe 1

The facts alleged in the complaint are sufficient to state a plausible Title IX claim based on MSU's response to Jane Roe 1's circumstances.

Defendants do not challenge their knowledge of the alleged sexual assault of Jane Roe 1. Plaintiffs allege Jane Roe 1 reported the assault to the MSU Police and to appropriate MSU officials. (Compl. ¶¶ 71–72.)

Plaintiffs' allegations are sufficient to plead the deliberate indifference element. Taken as true, the allegations show that Defendants' response was unreasonable in light of the known circumstances. The investigation took approximately nine months. The explanations for the delay provided by the investigator appear questionable. Jane Roe 1 and her mother had to reach out to the investigators every few weeks to check on the status of the investigation. The Court infers that John Doe 2 remained on campus, at least for a portion of the semester.[3] (Compl. ¶¶ 75 and 90.)

Plaintiffs' allegations are sufficient to show that MSU's deliberate indifference deprived Jane Roe 1 of educational opportunities. Taken as true, the inadequate manner in which MSU conducted its investigation created a situation where Jane Roe 1 did not feel safe on campus and avoided it at night, and led her to be absent or late to classes.

## C. Plaintiff Jane Roe 2

The facts alleged in the complaint do not state a plausible Title IX claim against Defendants based on Jane Roe 2's circumstances.

---

[3] Defendants cite paragraph 75 for the proposition that "John Doe 2 was no longer enrolled at MSU by the time that she made her report, and never returned." (Def. Br. at 16 PageID.300.) The relevant portion of paragraph 75 does not support Defendants' proposition. It states "[f]or the first time, she did mention that John Doe 2 had withdrawn from MSU for the time being." (Compl. ¶ 27.) Jane Roe 1 filed her report on February 25. Paragraph 75 discusses a conversation in late April.

Defendants do not challenge their knowledge of the alleged sexual assault of Jane Roe 2. Plaintiffs allege Jane Roe 1 reported the assault to appropriate MSU officials. (Compl. ¶ 93.)

Taken as true, the complaint does not allege facts establishing that MSU's actions were deliberately indifferent. The investigation took approximately six months. During the investigation, John Doe 3 was subject to a personal protection order granted to Jane Roe 2. Plaintiffs do allege that Jane Roe 2 did encounter her assailant once during the investigation, but provide no context or description of the encounter. Plaintiffs do not allege that Jane Roe 3 suffered any additional harassment after she made her initial report. John Doe 3 was ultimately expelled. After he was expelled, MSU allowed him to return once to attend a graduation ceremony. And, MSU warned Jane Roe 2 that John Doe was allowed to be there.

Finally, taking the allegations in the complaint as true, Jane Roe 2 has not alleged sufficient facts to show that she was deprived of educational opportunities because of MSU's deliberate indifference. She has not alleged facts to show that MSU's response to her report caused the drop in her grades, or her decision to stop playing rugby, or any of the other events alleged in the complaint.

### D.  Plaintiff Gross

The facts alleged in the complaint state a plausible Title IX claim against Defendants based on Gross's circumstances.

Defendants do not challenge their knowledge of the alleged sexual assault of Gross's circumstances. Plaintiffs allege Gross reported the assaults to appropriate MSU officials. (Compl. ¶ 144.)

Taking the allegations in the complaint as true, Plaintiffs have alleged sufficient facts to establish that MSU's response to Gross's report was unreasonable in light of known circumstances. This was at least the second time MSU had to investigate John Doe; MSU had already investigated John Doe for the allegations made by Kollaritsch.[4] The initial investigation, hearing, and appeals took more than one year to complete. Although the final decision was initially upheld after an appeal, John Doe's expulsion was subsequently set aside and second investigation was permitted. Throughout the investigation, John Doe remained on campus, although the complaint does not allege whether John Doe was subject to any restrictions on his contact with Gross.

Taking the allegations in the complaint as true, Plaintiffs have established that Gross was deprived of educational opportunities because of MSU's deliberate indifference. Because of the manner in which MSU investigated her report, she stopped participating in extra-curricular activities. Because of the stress caused by the investigation, Gross had problems in classes and had to seek accommodations from professors.

E.  Claims Arising from the DCL, the Resolution Agreement, and a Policy of Inaction

To the extent Plaintiffs' Title IX claims rely on standards identified in the DCL, in the Resolution Agreement, or by a policy of inaction, those claims must be dismissed. In various parts of the complaint, Plaintiffs assert that MSU's investigations violated standards identified in the DCL or in MSU's own policies, as reflected in the Resolution Agreement.

---

[4]     Plaintiffs allege John Doe also assaulted a female member of the Reserve Officer's Training Corps (ROTC).  (Compl. ¶¶ 136 and 144.)  Plaintiffs do not allege, however, that MSU was aware of the assault against the ROTC member.

In their response to the motion, Plaintiffs argue their Title IX claims can be based on a policy of inaction in response to known risks of sexual harassment.

An institution's failure to follow published procedures will not necessarily establish deliberate indifference.  Courts have generally not allowed plaintiffs to show deliberate indifference when a university does not follow the guidance suggested by the Department of Education's Dear Colleague Letter.  *See Butters v. James Madison Univ.*, 208 F. Supp. 3d 745, 757–58 (W.D. Va. 2016) (collecting cases).  The reasoning in those cases is persuasive.  The DCL states that it is a standard for administrative enforcement for cases where plaintiffs are seeking injunctive relief.  *Id.*  The standard contained in the DCL is a negligence standard, not a deliberate indifference standard.  *See id.*

The failure of a school to follow its own policies and regulations, standing alone, does not establish deliberate indifference.  *Sanches v. Carrollton-Farmers Indep. Sch. Dist.*, 647 F.3d 156, 169 (5th Cir. 2011) (quoting *Gebser*, 524 U.S. at 291-92); *see, e.g., Oden v. Northern Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (failing to follow school policy to hold a hearing within 30 days, where the hearing did not occur for 9 months, was not deliberate indifference because the victim, at least in part, caused the delay).  The Resolution Agreement issued in August 2015, *after* the events giving rise to each of the plaintiff's claims.  MSU could not be deliberately indifferent to guidelines identified in the Resolution Agreement when the document did not exist when the underlying investigations were occurring.

Finally, in their response brief, Plaintiffs assert a theory of deliberate indifference based on a policy of inaction by MSU in light of known risks of sexual harassment, borrowing

the theory from municipal liability cases. *See Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1178–79 (10th Cir. 2007) (involving a university policy for hosting potential student athletes that created circumstances where sexual assaults occurred and the administration had been warned by the district attorney). The Sixth Circuit has not published any opinion adopting a policy of inaction theory, although at least one district court within this circuit found the reasoning in *Simpson* persuasive. *See Doe v. Univ. of Tennessee*, 186 F. Supp. 3d 788, 804–05 (M.D. Tenn. 2016).

Plaintiffs have not pled facts sufficient to support a policy of inaction theory of deliberate indifference for a Title IX claim. Plaintiffs focus on MSU's alleged failure to publish and distribute information about its sexual harassment policies and procedures. *Gebser* rejected this avenue for showing discrimination under Title IX. In *Gebser*, the Court rejected the argument that a failure to promulgate and publicize an effective policy and grievance procedure for sexual harassment, as required by the Department of Education's regulations, would constitute a Title IX deliberate indifference claim. 524 U.S. at 291–92. And, the circumstances in *Simpson* and *Doe v. University of Tennessee* are distinct from the circumstances at MSU. In *Simpson* and *Doe*, the institutions created the circumstances where the sexual assaults occurred. Plaintiffs here have not identified an official policy of MSU that created situations where sexual harassment or sexual assaults had occurred in the past, and where the risk had been ignored.

## V.

In their motion, Defendants argue that the complaint fails to allege facts sufficient to state a claim for violations of the Due Process Clause.

In their response, Plaintiffs voluntarily dismiss their Due Process claims. (ECF No. 39 Pl. Resp. at 22 n.8 PageID.438.) Plaintiffs have not identified any authority which would permit them to withdraw a claim without prejudice after Defendants filed a motion to dismiss. *See, e.g.,* Fed. R. Civ. P. 41(a)(1)(A) (permitting voluntary dismissal of actions by a plaintiff if the dismissal occurs before the opposing party files an answer or motion for summary judgment). Plaintiffs did not file an amended complaint removing their Due Process claims. *See* Fed. R. Civ. P. 15(a)(1). Because Defendants have moved to dismiss Plaintiffs' Due Process claims, and because Plaintiffs have not responded to that portion of the motion, Defendants' motion to dismiss the Due Process claims will be granted.

## VI.

Defendants also argue that the complaint fails to allege facts sufficient to state a claim for violations of the Equal Protection Clause.

Claims for violations of constitutional rights may be brought under 42 U.S.C. § 1983. To state a § 1983 claim and avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts to support two elements: (1) there was the deprivation of a right secured by the United States Constitution, and (2) that the deprivation was caused by a person acting under color of state law. *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003). "[T]he existence of a constitutional right must be the threshold determination in any section 1983 claim[.]" *Claiborne Cty.,* 103 F.3d at 509. The Sixth Circuit has "consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008) (italics in

original).  "Allegations of *respondeat superior* do not sustain a § 1983 claim against state employees in their individual capacities, meaning that officials are personally liable for damages under that statute 'only for their own unconstitutional behavior.'"  *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)).

To state an Equal Protection claim under § 1983, the plaintiff must allege facts establishing that he or she was a victim of intentional and purposeful discrimination.  *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (collecting cases); *see Washington v. Davis*, 426 U.S. 229, 239 (1976) (discussing race discrimination claims brought under the Fourteenth Amendment's Equal Protection Clause).  "The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer to peer harassment: (1) disparate treatment of one class of students who complain about bullying as compared to other classes of students, and (2) deliberate indifference to discriminatory peer harassment."  *Stiles*, 819 F.3d at 851-52 (citing *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356-57 (6th Cir. 2014) and *Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 618 (6th Cir. 2012)).  The required discriminatory intent for an equal protection claim may be established by showing that school officials were deliberately indifferent to allegations of peer harassment.  *Port Huron*, 455 F. App'x at 618.

The deliberate indifference claim for a § 1983 equal protection claim is "substantially the same" as the deliberate indifference standard used in Title IX cases.  *Stiles*, 819 F.3d at 852 (quoting *Paint Valley Local Sch. Dist.*, 400 F.3d at 369).  To state a deliberate indifference claim under the Equal Protection clause, the plaintiff must allege facts showing

she was subjected to discriminatory peer harassment.  *Id.* (collecting cases).  The plaintiff must then allege facts establishing that school officials responded to the discriminatory peer harassment with deliberate indifference.  *Id.*

### A.  Intentional Discrimination

Defendants' argue that Plaintiffs did not allege intentional discrimination because of their status as members of a protected group.  Defendants' motion overlooks Sixth Circuit precedent which permits a plaintiff to show an Equal Protection violation through deliberate indifference to reports of peer sexual harassment.  Binding authority allows a plaintiff to establish an Equal Protection claim by showing "either that the defendants intentionally discriminated or acted with deliberate indifference."  *Stiles*, 819 F.3d at 852 (quoting *Shively*, 579 F. App'x at 357).  For their Equal Protection claim, Plaintiffs' rely on the alternative theory, each individual defendant's conduct amounted to deliberate indifference.

### B.  Deliberate Indifference

An individual defendant who is a government official may not be held liable under § 1983 under a theory of respondeat superior.  Each individual must have acted in an unconstitutional manner.  Plaintiffs have to show that each individual defendant demonstrated deliberate indifference to the peer harassment that occurred after the sexual assaults.

### 1.  Defendant Simon

Plaintiffs have not alleged sufficient facts to show that Simon was deliberately indifferent.  Simon's involvement is mentioned only in paragraphs 103 and 148 of the

complaint.[5]   None of those paragraphs allege facts suggesting deliberate indifference. Paragraph 103 provides background for Jane Roe 2's claim.  Simon is alleged to have said that it was a mistake to allow John Doe 3 to return to campus.  Plaintiffs have not alleged that Simon made the decision to allow John Doe 3 to return to campus.  Plaintiffs have not alleged that Simon participated in the investigation.  Paragraph 148 provides background information for Gross's claim.  In that paragraph Plaintiffs allege that Gross emailed Simon to express concerns about how MSU handled the investigation.  This allegation does not establish that Simon participated in the investigation.

### 2.  Defendant Youatt

Plaintiffs have not alleged sufficient facts to show that Youatt was deliberately indifferent.  Youatt is mentioned in only two paragraphs in the complaint.[6]  In paragraph 4, Youatt is named as a defendant and her job duties are described.  In paragraph 173, Youatt is identified as one of the defendants to Count 2.  The complaint contains no allegations about any action taken by Youatt.  The complaint does not allege that Youatt had knowledge of any of the events giving rise to any of the claims brought by Plaintiffs.

### 3.  Defendant Maybank

Plaintiffs have alleged sufficient facts for an Equal Protection claim against Defendant Maybank for her deliberate indifference to Gross's report, but not for deliberate indifference to either Kollaritsch's report or Jane Roe 2's report.  Maybank is mentioned in paragraphs

---

[5]        Not including a caption or heading, the Court cannot find where Plaintiffs even write Simon's name in their response to the motion to dismiss, let alone describe any conduct or inaction that might provide a basis for a claim against Simon.
[6]        Similar to the lack of information about Simon the Plaintiffs' response to the motion, Youatt's name does not appear in the brief, outside of the caption or heading.

64 and 65 (Kollaritsch background), 97 and 102 (Jane Roe 2 background), and 155 (Gross background).

For the Equal Protection claim brought by Gross, Plaintiffs have alleged sufficient facts to show that Maybank was deliberately indifferent. In paragraph 155, Plaintiffs allege, in November 2015, Maybank informed Gross that the initial investigation and conclusion would be disregarded and a new investigation would be opened into Gross's allegations against John Doe, which would be conducted by outside counsel. At least in the complaint, no explanation for this decision is provided. Assuming the allegations in the complaint to be true, including the allegation that John Doe sexually assaulted Gross three times and that the initial appeal was denied, this decision was unreasonable under the circumstances as a response to Gross's allegation of a sexual assault.

For the Equal Protection claim brought by Kollaritsch against Maybank, Plaintiffs have not alleged sufficient facts to show deliberate indifference. Kollaritsch contends she met with Maybank in August 2013 and told Maybank she did not feel safe on campus. Two weeks later, Maybank emailed Kollaritsch, "effectively refused to do anything," and told Kollaritsch to contact MSU Police. The meeting occurred after John Doe had been disciplined, after Kollartisch's retaliation complaint and been resolved, and after Kollaritsch's appeal was denied. These allegations do not show deliberate indifference; Maybank's response was not clearly unreasonable under the circumstances. The investigation and appeals process had been completed, and Maybank was relying on those proceedings. The Court will not second guess Maybank's decision.

For the Equal Protection claim brought by Jane Roe 2 against Maybank, Plaintiffs have not alleged sufficient facts to show deliberate indifference. In paragraph 97, Plaintiffs allege as Maybank upheld the expulsion of John Doe 3. This allegation cannot be the basis of a claim for deliberate indifference. Plaintiffs' claim must arise from the decision to allow John Doe 3 on campus for a graduation ceremony, the allegation in paragraph 107. It is not clear if Maybank made the decision to allow John Doe 3 on campus, or if Maybank denied Jane Roe 2's appeal of that decision. Neither decision amounts to deliberate indifference. MSU alerted Jane Roe 2 that John Doe 3 had been given leave to be on campus. Jane Roe 2 does not allege that she encountered John Doe 3 during this brief window.

## VII.

Defendants assert that they are immune from Plaintiffs' constitutional claims. Defendants assert that MSU Trustees are immune under the Eleventh Amendment. Defendants assert that the individual defendants are entitled to qualified immunity.

### A.  MSU Trustees

MSU Trustees are immune under the Eleventh Amendment from Plaintiffs' constitutional claims. In their response, Plaintiffs concede that "Defendant Regents" are an arm of the state and are immune from liability. (ECF No. 39 Pl. Resp. at 23 n.9 PageID.439.) Accordingly, the constitutional claims brought against Defendant MSU Trustees will be dismissed.

### B.  Qualified Immunity

Because Plaintiffs have withdrawn their Due Process claims, the Court considers only the Equal Protection claims.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a legal question for the court to resolve. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Elder v. Holloway*, 501 U.S. 510, 516 (1994)). When resolving a governmental employee's assertion of qualified immunity, the court determines (1) whether the facts the plaintiff has alleged or shown establishes the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the incident. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (citing *Pearson v. Callahan* 555 U.S. 223, 232 (2009)).

Once the qualified immunity defense is raised, the plaintiff bears the burden of demonstrating both that the challenged conduct violates a constitutional or statutory right and that the right was so clearly established at the time that "'every reasonable officer would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In determining whether a law is clearly established, ordinarily this Court looks to decisions of the Supreme Court and the Sixth Circuit. *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Wilson v. Layne*, 526 U.S. 603, 617 (1999). If controlling

authority does not clearly establish the law, this Court may consider other circuit authority. *Andrews v. Hickman Cty., Tennessee*, 700 F.3d 845, 853 (6th Cir. 2012). Although a prior case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at S.Ct. at 741. The clearly established prong will depend "substantially" on the level of generality at which the legal rule is identified. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The right must be clearly established in a particularized sense, and not at a general or abstract sense. *Id.* at 640. "This standard requires the courts to examine the asserted right at a relatively high level of specificity and on a fact-specific, case-by-case basis." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (edits omitted) (quoting *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997)).

The Court has already considered whether the allegations in the complaint establish that the individual defendants' conduct constituted deliberate indifference for an Equal Protection claim. For Defendants Simon and Youatt, the allegations were insufficient to establish deliberate indifference. Because the allegations do not establish an Equal Protection violation, their requests for qualified immunity are moot. *See Adams v. City of Auburn Hills*, 336 F.3d 515, 520 (6th Cir. 2003); *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999); *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998).

Defendant Maybank is not entitled to qualified immunity for the Equal Protection claim brought by Gross. Plaintiffs have established that the relevant rights were clearly established by 2012. By 1999, education administrators would have known that deliberate indifference to claims of peer harassment violates Title IX. *See Davis*, 526 U.S. at 648. In 2012, before any of these incidents occurred, the Sixth Circuit issued its opinion in *Williams*

*v. Port Huron School District.* Although that case involved racial discrimination, the panel addressed a claim that individual government officials may violate a plaintiff's Equal Protection claim through deliberate indifference to claims of peer harassment. The defendants raised qualified immunity as a defense, and the court found that each defendant was not deliberately indifferent. The court then declined to determine whether the right was clearly established. *Port Huron*, 455 F. App'x at 620. And, in August 2014, in *Shively v. Green Local School District Board of Education*, the court denied a claim for qualified immunity, finding that the "equal protection right to be free from student-on-student discrimination is well-established." 579 F. App'x at 538. The *Shively* panel cited *Williams*, a 1999 published case from the Tenth Circuit, and a 2003 published case from the Ninth circuit. *Id.* The *Williams* and *Shively* opinions confirm that Plaintiffs' Equal Protection right was clearly established at the time of these incidents.

VIII.

Defendants assert Plaintiffs' ELCRA claims are barred by the Eleventh Amendment. In their response, Plaintiffs' concede that their ELCRA claims are improper and voluntarily dismiss the claims. (ECF No. 39 Pl. Resp. at 1 n.1 PageID.417.) The Court grants Defendants' motion for the ELCRA claims for the same reasons the Court grants Defendants' motion for the Due Process claims.

IX.

Defendants have demonstrated that some of Plaintiffs' claims cannot survive a motion to dismiss. Because Plaintiffs have conceded their Due Process claims, their ECLRA claims, and their claim against the Trustees for Equal Protection, those claims will dismissed. Jane

Roe 2's Title IX claim must be dismissed because the complaint does not allege facts to show that MSU's response to her report was deliberately indifferent or that she was deprived of educational opportunities as the result of deliberate indifference.  Plaintiffs' Title IX claims based on the DCL, the Resolution Agreement, and a policy of inaction in response to known dangers are dismissed.  The DCL does not set forth standards that can be used for a Title IX claim and the Resolution Agreement was not issued when these events occurred. Plaintiffs have not alleged facts to support a claim based on a policy of inaction in response to known dangers, as that theory has been described in other Title IX opinions.  The Equal Protection claims brought against Simon and Youatt are dismissed.  The complaint does not plead sufficient facts to show either defendant acted with deliberate indifference.  For the same reason, the Equal Protection claims brought by Kollaritsch and Jane Roe 2 against Maybank are dismissed.  Because the law was clearly established at the time, Defendant Maybank's request for qualified immunity for the Equal Protection claim is denied.  The following claims are not dismissed: (1) Kollartich's Title IX claim against MSU Trustees, (2) Jane Roe 1's Title IX claim against MSU Trustees, (3) Gross's Title IX claim against MSU Trustees, and (4) Gross's Equal Protection claim against Maybank.

## ORDER

For the reasons provided in the accompanying Opinion, Defendants' motion to dismiss (ECF No. 28) is **GRANTED IN PART and DENIED IN PART.**

The following claims are DISMISSED with prejudice: (1) Plaintiffs' Due Process claims, (2) Plaintiffs' ELCRA claims, (3) Plaintiffs' Equal Protection claim against Defendant Trustees, (4) Jane Roe 2's Title IX claim against Defendant Trustees, (5) Plaintiffs' Title IX claims arising from the DCL, the Resolution Agreement, and MSU Trustee's policy of inaction, (6) Plaintiffs' Equal Protection claims against Defendant Simon, (7) Plaintiffs' Equal Protection claims against Defendant Youatt, (8) Plaintiff Kollaritsch's Equal Protection claim against Defendant Maybank, and (9) Plaintiff Jane Roe 2's Equal Protection Claim against Defendant Maybank.

Also, Defendant Maybank's request for qualified immunity is DENIED.

**IT IS SO ORDERED.**

Date:  November 2, 2017                            /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge