# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed:  December 12, 2019

Mr. Michael Edward Baughman
Pepper Hamilton, 18th & Arch Streets, Suite 3000
Philadelphia, PA 19103

Ms. Seanna Brown
Baker & Hostetler
45 Rockefeller Center
New York, NY 10111

Ms. Jennifer B. Salvatore
Salvatore Prescott & Porter
105 E. Main Street
Northville, MI 48167

Alexander Solomon Zalkin
10590 W. Ocean Air Drive, Suite 125
San Diego, CA 92130

Re:   Case Nos. 17-2445/18-1715, *Emily Kollaritsch, et al v. MI St Univ Bd of Trustees, et al*
        Originating Case No. : 1:15-cv-01191

Dear Counsel,

    The court today announced its decision in the above-styled cases.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Thomas Dorwin

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0293p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

EMILY KOLLARITSCH, et al.,

*Plaintiffs-Appellees*,

v.

MICHIGAN STATE UNIVERSITY BOARD OF TRUSTEES;
DENISE MAYBANK, in her individual and official
capacity as Vice President for Student Affairs,

*Defendants-Appellants*.

Nos. 17-2445/18-1715

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cv-01191—Paul Lewis Maloney, District Judge.

Argued:  March 20, 2019

Decided and Filed:  December 12, 2019

Before:  BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

───────────────

### COUNSEL

**ARGUED:** Michael E. Baughman, PEPPER HAMILTON LLP, Philadelphia, Pennsylvania, for
Appellants.  Alexander S. Zalkin, THE ZALKIN LAW FIRM, P.C., San Diego, California, for
Appellees.  **ON BRIEF:** Michael E. Baughman, Hedya Aryani, PEPPER HAMILTON LLP,
Philadelphia, Pennsylvania, for Appellants.  Alexander S. Zalkin, THE ZALKIN LAW FIRM,
P.C., San Diego, California, for Appellees.  Seanna R. Brown, BAKER & HOSTETLER LLP,
New York, New York, for Amicus Curiae.

  BATCHELDER, J., delivered the opinion of the court in which THAPAR, J., joined, and
ROGERS, J., joined in part.  THAPAR, J. (pp. 16–19), delivered a separate concurring opinion.
ROGERS, J., (pg. 20), delivered a separate opinion concurring in part and in the result.

———————————————

## OPINION

———————————————

ALICE M. BATCHELDER, Circuit Judge.   A victim of "student-on-student sexual harassment" has a private cause of action against the school under Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, codified as 20 U.S.C. § 1681, *et seq*., based on the formula first set out in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). Under that formula, the sexual harassment must meet a certain standard and the evidence must satisfy the elements for an intentional tort.   Our particular focus in this appeal is on the requirements that the harassment must be "pervasive" and the school's response must "cause" the injury.   In short, we hold that a student-victim plaintiff must plead, and ultimately prove, that the school had actual knowledge of actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable sexual harassment against the student-victim, which caused the Title IX injuries.   A student-victim's subjective dissatisfaction with the school's response is immaterial to whether the school's response caused the claimed Title IX violation.   Because none of the plaintiffs in this case suffered any actionable sexual harassment *after* the school's response, they did not suffer "pervasive" sexual harassment as set out in *Davis* and they cannot meet the causation element.   We also find that the individual defendant is entitled to qualified immunity.   Altogether, we REVERSE the district court's order and REMAND for entry of a final judgment dismissing these claims.

## I.

This lawsuit stems from four student-on-student sexual assaults at Michigan State University.   In each case, a male student sexually assaulted a female student and she reported it to campus police and to the proper administrative authorities, which undertook a response beginning with an investigation.   The plaintiffs are the female student victims: Emily Kollaritsch, Shayna Gross, Jane Roe 1, and Jane Roe 2.   But this lawsuit is not about the sexual assaults, nor is it directed at the perpetrators; it is directed at the University administration and its response. The plaintiffs contend that the administration's response was inadequate, caused them physical

and emotional harm, and consequently denied them educational opportunities.  They sued the Michigan State University Board of Trustees (hereinafter "MSU") and Vice President for Student Affairs Denise Maybank, among several others, claiming violations of Title IX, Due Process and Equal Protection under 42 U.S.C. § 1983, and Michigan law.

The defendants moved to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Following a hearing and the plaintiffs' withdrawal of several claims, the district court dismissed all but four claims: the claims by Kollaritsch, Gross, and Roe 1 that MSU violated Title IX, and the § 1983 claim by Gross that Maybank violated her right to equal protection.  *See Kollaritsch v. Mich. State Univ. Bd. of Tr.*, 298 F. Supp. 3d 1089, 1096 (W.D. Mich. 2017).

Maybank filed an interlocutory appeal of the district court's denial of her assertion of qualified immunity.  *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (providing a defendant the right to an interlocutory appeal of the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law").  Meanwhile, MSU moved the district court to certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (providing for interlocutory appeal of qualifying issues at the courts' discretion) and, upon certification, moved this court to permit the appeal.  We granted the motion, explaining that "whether a plaintiff must plead further acts of discrimination to allege deliberate indifference to peer-on-peer harassment under Title IX" is a controlling question of law warranting immediate appeal.  We consolidated the appeals.

From a procedural posture, a § 1292(b) interlocutory appeal such as this one is unusual in that it arises from a denial rather than a grant of a Rule 12(b)(6) motion to dismiss the complaint, so "we are not governed by the Rule 12(b)(6) standard of review" for granted motions.  *Foster Wheeler Energy Corp. v. Metro. Knox Solid Waste Auth.*, *Inc.*, 970 F.2d 199, 202 (6th Cir. 1992). This is a review "limited to pure questions of law."  *Id.*; *but see Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (explaining that we are not limited to only the specifically certified *question* but may "address any issue fairly included within the certified order").  We do not make any determination of any facts, even by implication; the analyses and decisions herein leave all questions of fact unresolved and all allegations still merely alleged.  *See Sheet Metal*

*Emp'rs Indus. v. Absolut Balancing Co.*, 830 F.3d 358, 361 (6th Cir. 2016).  This same limitation
applies to the facts accepted as true for purposes of our deciding the qualified-immunity claim.

## II.

By design and effect, the *Davis* Court's Title IX private cause of action against a school
for its response to student-on-student sexual harassment is a "high standard" that applies only "in
certain limited circumstances."  *Davis*, 526 U.S. at 643.  The school is "properly held liable in
damages only where [it is] deliberately indifferent to sexual harassment, of which [it] has actual
knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive
the victims of access to the educational opportunities or benefits provided by the school."  *Id.* at
650.

Ordinarily, we state the *Davis* standard as a three-element test and ordinarily that is
enough.[1]  But, even without the careful parsing that follows, the *Davis* formula clearly has two
separate components, comprising separate-but-related torts by separate-and-*un*related tortfeasors:
(1) "actionable harassment" by a student, *id.* at 651-52; and (2) a deliberate-indifference
intentional tort by the school, *id* at 643.  The critical point here is that the *Davis* formulation
requires that the school had actual knowledge of some actionable sexual harassment and that the
school's deliberate indifference to it resulted in further actionable harassment of the student-
victim.

*Actionable Sexual Harassment*.  We can conservatively describe "harassment," without
additional qualification, as some type of aggressive and antagonistic behavior that, from the
victim's perspective, is uninvited, unwanted, and non-consensual.  For student-on-student sexual
harassment to be *actionable* under *Davis*'s Title IX private-cause-of-action formulation, it must
be (a) severe, (a) pervasive, and (c) objectively offensive.  *Id.* at 651; *see, e.g.*, *Pahssen v. Merrill
Cmty. Sch. Dist.*, 668 F.3d 356, 363 (6th Cir. 2012) (holding that harassment comprising a shove

---

[1] *See, e.g.*, *Gordon v. Traverse City Area Pub. Sch.*, 686 F. App'x 315, 323 (6th Cir. 2017); *Stiles ex rel.
D.S. v. Grainger Cty.*, 819 F.3d 834, 848 (6th Cir. 2016); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362
(6th Cir. 2012); *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 444-45 (6th Cir. 2009); *Vance v. Spencer Cty. Pub.
Sch. Dist.*, 231 F.3d 253, 258-59 (6th Cir. 2000); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999).

into a locker, an "obscene sexual gesture," and a "request for oral sex" did "not rise to the level of severe, pervasive, and objectively offensive conduct" (quotation marks omitted)).

"Severe" means something more than just juvenile behavior among students, even behavior that is antagonistic, non-consensual, and crass. The *Davis* Court made an explicit admonishment that "simple acts of teasing and name-calling" are not enough, "even where these comments target differences in gender." *Davis*, 526 U.S. at 651; 652 ("It is not enough to show . . . that a student has been teased or called offensive names." (quotation marks and editorial marks omitted)).[2]

"Pervasive" means "systemic" or "widespread," *id.* at 652-53, but for our purposes, it also means *multiple* incidents of harassment; one incident of harassment is not enough. *Id.* (explaining that this cause of action does not cover "claims of official indifference to a single instance of one-on-one peer harassment"). The *Davis* Court hypothesized that a single incident could be sufficiently *severe* that it would result in the articulated injury—and we do not doubt that a sexual assault would be such a severe incident—but the Court held that a single incident would nonetheless fall short of Title IX's requirement of "systemic" harassment. As the Court put it:

> Although, in theory, a single instance of sufficiently severe one-on-one peer harassment *could be said to have such an effect, we think it unlikely* that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment. By limiting private damages actions to cases having a *systemic effect* on educational programs or activities, we reconcile the general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior, realities that Congress could not have meant to be ignored.

*Id.* at 652-53 (emphasis added). The *Davis* dissent offered its view of this passage, which the majority did not dispute: "The majority appears to intend [the pervasiveness] requirement to do

---

[2]We do not imply that "severe" requires physical contact, or that *Davis* holds that it does. *See Davis*, 526 U.S. at 653 (describing the harassment in that case). Obviously, verbal harassment can exceed teasing and name-calling, and the severity of harassment on social media is virtually boundless. But we have no such scenario in this case.

no more than exclude the possibility that a single act of harassment perpetrated by one student on one other student can form the basis for an actionable claim." *Id*. at 677 (Kennedy, J., dissenting). That a single incident is insufficient on its own to state a claim correspondingly adds further support to the requirement that at least one more (*further*) incident of harassment, after the school has actual knowledge and implements a response, is necessary to state a claim.[3]

"Objectively offensive" means behavior that would be offensive to a reasonable person under the circumstances, not merely offensive to the victim, personally or subjectively. *Id*. at 651. "Whether gender-oriented conduct rises to the level of actionable harassment thus depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Id*. (quotation marks omitted). The victim's perceptions are not determinative. "Indeed, the [*Davis* majority] . . . suggests that the 'objective offensiveness' of a comment is to be judged by reference to a reasonable child at whom the comments were aimed." *Id*. at 678 (Kennedy, J., dissenting).

*Deliberate Indifference Intentional Tort*. Even upon establishing actionable student-on-student harassment, a plaintiff must also plead and prove four elements of a deliberate-indifference-based intentional tort: (1) knowledge, (2) an act, (3) injury, and (4) causation.

"Knowledge" means that the defendant school had "actual knowledge" of an incident of actionable sexual harassment that prompted or should have prompted a response. *Id*. at 650; 642 (rejecting an imputed-knowledge standard under agency principles or a should-have-known standard based in negligence); *see McCoy v. Bd. of Educ.*, 515 F. App'x 387, 392 (6th Cir. 2013) ("[T]here is a connection between what school officials know and whether their response is clearly unreasonable."). Ordinarily, "deliberate indifference" means that the defendant both knew and consciously disregarded the known risk to the victim. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

---

[3]In *Vance v. Spencer County Public School District*, 231 F.3d 253, 259 n.4 (6th Cir. 2000), we mistakenly opined that a single incident of sexual harassment could satisfy a Title IX claim. But the *Vance* plaintiff had presented several instances of severe and pervasive sexual harassment, *id*., making the assertion dicta, so we are not bound by it. Regardless, *Davis* holds that a single incident cannot constitute pervasive harassment under Title IX.

An "Act" means a response by the school that was "clearly unreasonable in light of the known circumstances," *Davis*, 526 U.S. at 648, thus demonstrating the school's deliberate indifference to the foreseeable possibility of *further* actionable harassment of the victim. *Id.* at 643 ("Deliberate indifference makes sense as a theory of direct liability under Title IX only where the [school] has some control over the alleged harassment . . . [and] authority to take remedial action."); *but see id.* at 667 (Kennedy, J., dissenting) ("Yet the majority's holding would appear to apply with equal force to universities, which do not exercise custodial and tutelary power over their adult students."). Because the further harassment must be inflicted against the same victim, the plaintiff "cannot . . . premise the [further harassment] element of her Title IX claim on conduct [by the perpetrator] directed at third parties." *Pahssen*, 668 F.3d at 363; *see also Patterson v. Hudson Area Sch.*, 551 F.3d 438, 452 (6th Cir. 2009) (Vinson, J., dissenting) ("Obviously, the school district is not responsible for failing to stop harassment of which it was not made aware, nor can it be held responsible for failing to punish harassment by unknown individuals.").

"Injury" in this Title IX context means the deprivation of "access to the educational opportunities or benefits provided by the school," *Davis*, 526 U.S. at 650, which the fifth-grade victim in *Davis* described as her inability "to concentrate on her studies" (causing her grades to deteriorate), her fear of attending school (telling her mother "at one point . . . that she didn't know how much longer she could keep [the perpetrator] off her"), and eventually a suicide note, *id*. at 634 (quotation marks, editorial marks, and citations omitted). *See also Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (describing the victim's injuries as her having to "complet[e] her studies at home" and her deteriorating grades due to her being "diagnosed with depression"). Emotional harm standing alone is not a redressable Title IX injury.

"Causation" means the "Act" caused the "Injury," such that the injury is attributable to the post-actual-knowledge *further* harassment, which would not have happened but for the clear unreasonableness of the school's response. *Davis*, 526 U.S. at 644. Importantly, *Davis* does not link the deliberate indifference directly to the injury (i.e., it does *not* speak of subjecting students to *injury*); *Davis* requires a showing that the school's "deliberate indifference 'subject[ed]' its

students to *harassment*," necessarily meaning further actionable harassment. *Id.* (emphasis added); *see also Thompson v. Ohio State Univ.*, 639 F. App'x 333, 343-44 (6th Cir. 2016) (relying on further harassment in finding that "Thompson did not raise any further harassment or discrimination with OSU's HR office, nor did OSU have any other reason to believe that its efforts to remediate were ineffective or disproportionate" (quotation and editorial marks omitted)).  But the occurrence of further harassment is not enough by itself; the response's *unreasonableness* must have caused the further harassment.  *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 851 (6th Cir. 2016) ("Although the school's efforts did not end [the victim's] problems, Title IX does not require school districts to eliminate peer harassment.").  The school's response must be clearly unreasonable *and* lead to further harassment.  But the critical point is that the response must bring about or fail to protect against the further harassment, which the Court stated as: "[T]he deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."  *Davis*, 526 U.S. at 645 (quotation marks, editorial marks, and citations omitted).

The plaintiffs contend that the isolated phrase *make them vulnerable* means that post-actual-knowledge *further* harassment is not necessary—that vulnerability alone is its own causal connection between the Act and the Injury.  They point to *Davis*'s causation statement that "the deliberate indifference must, at a minimum, [1] cause students to undergo harassment *or* [2] make them liable or vulnerable to it," *id.* (emphasis added), from which they argue: this statement poses two alternatives (cause *or* make vulnerable); the first (cause) clearly requires some further harassment; therefore, the second must *not* require further harassment or else it would be redundant and surplusage.  But this logical argument is predicated on a faulty unstated premise: that the two alternatives are necessarily between further harassment and no further harassment.  That is a misreading of *Davis* as a whole and the causation element in particular. *See* Zachary Cormier, *Is Vulnerability Enough? Analyzing the Jurisdictional Divide on the Requirement for Post-Notice Harassment in Title IX Litigation*, 29 Yale J.L. & Feminism 1, 23 (2017) (concluding from a "natural reading" of *Davis* that, "[r]ather than beginning an entirely separate idea, the vulnerability component completes the idea that began within the causation component").

A plain and correct reading of that two-part causation statement, *Davis*, 526 U.S. at 645, particularly when read in conformity with the overall opinion, reveals that the two alternatives are actually two possible ways that the school's "clearly unreasonable" response could lead to further harassment: that response might (1) be a detrimental action, thus fomenting or instigating further harassment, or it might (2) be an insufficient action (or no action at all), thus making the victim vulnerable to, meaning unprotected from, further harassment.  Stated in a more articulate way:

> The *Davis* Court described wrongful conduct of both *commission* (directly causing further harassment) and *omission* (creating vulnerability that leads to further harassment).  The definition presumes that post-notice harassment *has* taken place; vulnerability is simply an alternative pathway to liability for harassment, not a freestanding alternative ground for liability.  In sum, the vulnerability component of the . . . 'subjected' definition was not an attempt at creating broad liability for damages for the *possibility* of harassment, but rather an effort to ensure that a student who experiences post-notice harassment may obtain damages regardless of whether the harassment resulted from the institution *placing* the student in a position to experience that harassment or *leaving* the student vulnerable to it.

Cormier, 29 Yale J.L. & Feminism at 23-24.  We find this explanation persuasive.

The plaintiffs cite several cases that rely on their same misreading of *Davis* to support that same inapt logical argument.  But none of those cases is controlling.  And, because we find none of them persuasive, we decline to address them specifically or discuss them here.

Finally, the plaintiffs argue that a Title IX student-on-student cause of action cannot require *further* harassment because, they contend, a single, sufficiently severe sexual assault is enough to state a viable action.  But that too is a misreading of *Davis*, as was explained, *supra*, in the analysis of the "pervasive" element, which quoted and relied on *Davis*, 526 U.S. at 652-53.  A single assault—particularly before any notice or response—does not state a claim under *Davis*.

A Title IX private cause of action against a school for deliberate indifference to student-on-student sexual harassment comprises the two components of actionable sexual harassment by a student and a deliberate-indifference intentional tort by the school, along with the underlying elements for each.  We hold that the plaintiff must plead, and ultimately prove, an incident of

actionable sexual harassment, the school's actual knowledge of it, some further incident of actionable sexual harassment, that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the Title IX injury is attributable to the post-actual-knowledge further harassment.

### III.

In a § 1292(b) interlocutory appeal, we decide "pure questions of law," *Foster Wheeler*, 970 F.2d at 202, regarding "any issue fairly included within the certified order," *Yamaha Motor Corp.*, 516 U.S. at 205.  The next question in this appeal is whether the perpetrators' behavior after the school's response, as pleaded in the Complaint, satisfies the causation element, *supra*, or whether that post-response behavior could not, as a matter of law, satisfy the standard for *actionable* sexual harassment and, consequently, could not satisfy the causation element.

In January 2012, Emily Kollaritsch reported to MSU that a male student had sexually assaulted her, which triggered MSU's response.  MSU completed an investigation in August 2012 and disciplined the perpetrator in November 2012 by placing him on probation and forbidding him any contact with Kollaritsch.  But Kollaritsch subsequently encountered him at least nine times—she says that he "stalked, harassed and/or intimidated" her at least nine times. Kollaritsch also says that when she filed a formal "retaliation complaint" in March 2013, the MSU administrator said "there was a difference between retaliation and just seeing [him,] and consistently suggested that Kollaritsch needed mental health services."   MSU nonetheless conducted an investigation, which determined that no retaliation had occurred.

Kollaritsch has not pleaded further actionable sexual harassment.  She did not provide any details or assert any facts about these encounters to show—or even suggest—that they were sexual, or that they were severe, pervasive, or objectively unreasonable.  In describing her encounters in the Complaint, she suggested that these were merely their mutual presence at the same location:

> [The perpetrator] and Kollaritsch lived in the same dormitory and frequented the same cafeteria and public areas around the dormitory. Kollaritsch actually encountered [him] on multiple occasions, subsequent to filing her official report. On more than one instance, Kollaritsch encountered [him] at a dormitory

cafeteria.  On each of these occasions, Kollaritsch experienced a panic attack, and was forced to leave the building, often crying, lightheaded, and significantly distraught.

Kollaritsch characterized the nine encounters as "stalking, harassing, and intimidating," but those conclusory statements, without supporting facts, are meaningless.  In the Complaint, Kollaritsch expressed her indignation at the MSU administrator for discounting the encounters as nothing more than her "just seeing him," but she did not provide any rebuttal that would describe the encounters as something more (i.e., something sexual, severe, pervasive, or objectively offensive).[4]  *See Gordon v. Traverse City Area Pub. Sch.*, 686 F. App'x 315, 325 (6th Cir. 2017) (because plaintiffs "offer no details on the nature of this additional harassment, when it occurred, or how [defendant] responded," "these missing pieces doom [their] case").

We hold as a matter of law that Kollaritsch's allegations, as stated in her Complaint, do not plead actionable further sexual harassment and, therefore, she has not pleaded and cannot show causation necessary to state a viable deliberate-indifference claim under Title IX and *Davis*.

In February 2014, Shayna Gross reported to MSU that a male student had sexually assaulted her, which triggered MSU's response.  MSU completed an investigation in October 2014, finding sexual assault, and disciplined the perpetrator in January 2015 by expelling him from the university.  MSU denied his first appeal, but his second appeal led to a new investigation by an outside law firm, which found no sexual assault, and MSU presumably reinstated him.  At no point after the initiation of MSU's response did that male student have any contact with or commit any *further* harassment of Gross.  In the Complaint, Gross said only that she "could have encountered him at any time" due to his "mere presence . . . on campus."  Gross did not plead any facts that would show any post-response encounter, much less any further sexual harassment that was actionable.

---

[4]It is noteworthy that the plaintiffs' overall theory and argument is that *further* actionable harassment is not necessary, arguing in their appellate brief that "a victim need not suffer actual, subsequent harassment in order to state a claim[, but] [r]ather, a vulnerability to additional harassment . . . is sufficient."  That is an unnecessary theory if the facts and circumstances of these encounters *could* demonstrate actionable further sexual harassment.

We hold as a matter of law that Gross's allegations, as stated in her Complaint, do not plead actionable further sexual harassment and, therefore, she has not pleaded and cannot show causation necessary to state a viable deliberate-indifference claim under Title IX and *Davis*.

In February 2014, Jane Roe 1 reported to MSU that a male student had sexually assaulted her, which triggered MSU's response.  MSU completed an investigation in November 2014, declining to find sexual assault due to insufficient evidence.  At no point after the initiation of MSU's response did the male student have any contact with or commit any further harassment of Roe 1; in fact, he withdrew from the university in April 2014.  There is no indication that he ever returned.  In her Complaint, Roe 1 said that the male student "could return to campus without [her] knowledge," and that his "mere presence . . . on campus, after [she] made her report to MSU . . . created a hostile environment for [her] and made her vulnerable to further harassment."  She did not plead any facts that would show any post-response encounter, much less any further sexual harassment that was actionable.

We hold as a matter of law that Roe 1's allegations, as stated in her Complaint, do not plead actionable further sexual harassment and, therefore, she has not pleaded and cannot show causation necessary to state a viable deliberate-indifference claim under Title IX and *Davis*.

## IV.

When Shayna Gross reported that a male student had sexually assaulted her, MSU undertook an investigation that found sexual assault and it ordered the male student expelled from the University.  The male student appealed and MSU denied his first appeal, but when he appealed again, Denise Maybank, MSU's Vice President for Student Affairs, set aside the previous findings and ordered that a new investigation be conducted by an outside law firm, which found no sexual assault.  Gross claimed that Maybank's response was deliberately indifferent and violated her clearly established right to equal protection, making Maybank liable to Gross under § 1983. Maybank moved to dismiss the claim, asserting qualified immunity, but the district court denied the motion, holding that Gross had stated an "equal protection right to be free from student-on-student discrimination" that was "well-established."  *Kollaritsch*, 298 F. Supp. 3d at 1109 (quotation marks and citation omitted).  Although the Complaint was not so

specific, the district court reasonably determined that the claim centered on Maybank's decision to set aside the initial investigation's finding of sexual assault and order a new investigation by outside counsel. *Id.* at 1107.**5** The district court did not elaborate further on the specifics, but emphasized that, "[a]t least in the [C]omplaint, no explanation for this decision is provided," and declared the decision "unreasonable under the circumstances as a response to Gross's allegation of a sexual assault." *Id.*

Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions, unless their actions violate clearly established rights. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019). To survive a motion to dismiss based on qualified immunity, the complaint must allege facts that, if proven to be true, would show the violation of a right so clearly established that a reasonable official would necessarily have recognized the violation. *Id.* at 898. "[D]amage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Id.* at 899. The Supreme Court has been emphatic and explicit in what it means by "clearly established":

> [T]he legal principle [must] clearly prohibit the offic[ial]'s conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. . . . [C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the offic[ial]'s conduct does not follow immediately from the conclusion that the rule was firmly established.

*District of Columbia v. Wesby*, 583 U.S. --, 138 S. Ct. 577, 590 (2018) (quotation marks, editorial marks, and citations omitted). And, as we have said, "[t]here does not need to be a case directly on point, but existing precedent must have placed the constitutional question beyond debate." *Cahoo*, 912 F.3d at 898 (quotation marks, editorial marks, and citation omitted).

---

**5**On appeal, Gross has described the violation as: "Maybank, without authority in the policies or procedures of MSU[,] nullified the prior investigation of [Gross's] assailant and voided his sanctions on an unsanctioned second appeal by the assailant." We can accept this description for our purposes.

Gross claims that Maybank's decision to set aside the initial investigation's finding of
sexual assault (and the initial order of expulsion) and, without explanation or citation to
authority, order a new investigation by outside counsel, violated her clearly established equal-
protection right to be free from student-on-student discrimination.  Gross cites two cases for
support, *Shively v. Green Local School District Board of Education*, 579 F. App'x 348, 358 (6th
Cir. 2014), and *Doe v. Forest Hills School District*, No. 1:13-cv-428, 2015 WL 9906260, at \*14
(W.D. Mich. Mar. 31, 2015), but neither case addresses with a "high degree of specificity"
anything like Maybank's act of setting aside one investigation in favor of another without
explanation or apparent authority, much less under these "particular circumstances," as is
required by *Wesby*, 138 S. Ct. at 590.

Moreover, Gross's theory fundamentally contradicts *Davis*, 526 U.S. at 648.  *Davis*
explained that "[s]chool administrators will continue to enjoy the flexibility they require" in
conducting investigations and imposing discipline, and "courts should refrain from second-
guessing the disciplinary decisions made by school administrators." *Id.* at 648 (citation omitted).
Particularly prescient here is the *Davis* dissent's comment that "[o]ne student's demand for a
quick response to her harassment complaint will conflict with the alleged harasser's demand for
due process," putting the school in a position where it is "beset with litigation from every side."
*Id.* at 682 (Kennedy, J., dissenting).  Such were Maybank's "particular circumstances," as she
was caught between Gross's demand for judgment and punishment on one side and the accused
male student's appeal for additional due process on the other.  *See also M.D. v. Bowling Green
Indep. Sch. Dist.*, 709 F. App'x 775, 777 (6th Cir. 2017) ("Often, school administrators face the
unenviable task of balancing victims' understandable anxiety with their attackers'
rehabilitation.").

Gross is clearly dissatisfied with Maybank's decision to overturn the male student's
punishment (expulsion), which also served as Gross's remedy.[6]  But Gross has no "right" to her
preferred remedy.  *Davis* expressly denied the prospect "that administrators must engage in

---

[6]Gross is also dissatisfied with Maybank's decision to set aside the initial investigation's findings and order
a new investigation to be conducted by an outside law firm, but Gross would have little, if any, genuine complaint if
the new investigation had upheld the initial investigation and led Maybank to sustain the initial punishment.

Nos. 17-2445/18-1715          *Kollaritsch, et al. v. Mich. State*          Page 15
                              *Univ. Bd. of Trustees, et al.*

particular disciplinary action," and stressed that the victim does *not* "have a Title IX right to make particular remedial demands."  *Id.* at 648; *see also Stiles*, 819 F.3d at 848; *M.D.*, 709 F. App'x at 777.   Gross claimed a right to be free from student-on-student discrimination and predicated the alleged violation of that right on her belief that Maybank's decision about the punishment (her remedy) was deliberately indifferent.  But Gross has pointed us to no legal principle or precedent that clearly prohibits Maybank's otherwise discretionary decision under these "particular circumstances."  *See Wesby*, 138 S. Ct. at 590.  Gross has not claimed a violation of any other right.

The Complaint does not allege facts showing that Maybank violated Gross's clearly established constitutional right to equal protection.  Maybank is entitled to qualified immunity.

## V.

For the foregoing reasons, we REVERSE the district court's order denying the defendants' motion to dismiss the Complaint and REMAND for entry of judgment dismissing these claims.

––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––

THAPAR, Circuit Judge, concurring.  I join the majority opinion in full.  But since the question here has divided our sister circuits, I write separately to explain why.

To begin with, I should emphasize that the allegations in this case are troubling.  The plaintiffs allege facts suggesting that Michigan State University seriously mismanaged its Title IX process.  And that matters to everyone involved—the victims, the accused, their families and friends, and the broader University community.  Everyone has an interest in a timely, fair, and transparent process for resolving claims of sexual assault.  So long as we expect universities to adjudicate such claims, we should expect them to do better.

But this case is not about whether the University mismanaged its Title IX process.  Rather, the question here is whether Michigan State University "subjected" the plaintiffs to "discrimination" (as those terms are used in Title IX).  To answer that question, the parties agree, we should look to the Supreme Court's decision in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).  There, the Court decided that a school may be held liable for "student-on-student harassment" only if the school "acts with deliberate indifference to known acts of harassment in its programs or activities" and that harassment is "severe, pervasive, and objectively offensive."  *Id.* at 633.  The parties also agree that *Davis* established a causation requirement.  The Court made clear that a school "may not be liable for damages unless its deliberate indifference 'subjects' its students to harassment."  *Id.* at 644 (alteration adopted).  Yet the parties—as well as our sister circuits—disagree about what this requirement entails.

That confusion has arisen based on the Supreme Court's definition of the term "subjects."  In *Davis*, the Court said that the school's deliberate indifference must "'cause students to undergo' harassment or 'make them liable or vulnerable' to it."  *Id.* at 645 (alteration adopted) (quoting *Random House Dictionary of the English Language* 1415 (1966); *Webster's Third New International Dictionary* 2275 (1961)).  Some courts have read this language broadly.  Students must allege only that the school's deliberate indifference made harassment more likely, not that

it actually led to any harassment.  *See, e.g.*, *Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103–04 (10th Cir. 2019); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *rev'd on other grounds,* 555 U.S. 246 (2009).  Other courts have read the language more narrowly. Students must allege that the school's deliberate indifference actually led to harassment, not that it only made such harassment more likely.  *See, e.g.*, *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057–58 (8th Cir. 2017); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1155–56 (10th Cir. 2006); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).

Today, our circuit adopts the latter view, and I think rightly so.  Under Title IX, schools can "subject" their students to harassment in two different ways.  First, the school can "cause" the harassment directly.  Imagine, for instance, that the school sent disparaging emails to just its female students.   In that scenario, we would have no trouble saying that the school had "subjected" the students to harassment.  After all, the school's conduct quite directly led to the harassment.  Yet *Davis* also said that schools can "subject" their students to harassment in a second way:  the school can make its students "vulnerable" to harassment.  Take the facts of *Davis* itself.  There, the school "subjected" a student to harassment because it failed to take any effort to prevent or end ongoing harassment by another student.  *Davis*, 526 U.S. at 635, 654. Unlike in the first scenario, the school's conduct did not directly cause the harassment.  But still the Court concluded that the school had "effectively caused" the harassment.  *Id.* at 642–43 (cleaned up).  And that's because the school's conduct indirectly led to the harassment:  it left the student vulnerable to her harasser.

But in either scenario, we wouldn't say that the school had "subjected" its students to harassment if the students never experienced any harassment as a result of the school's conduct. To be "subjected" to a harm, as a matter of ordinary English, requires that you experience that harm.   And that holds true whether someone directly causes the harm or simply makes you vulnerable to it.

That more precise reading also makes sense when you consider the specific statutory text. Under Title IX, "[n]o person in the United States shall, on the basis of sex . . . be *subjected to discrimination* under any education program or activity receiving [federal funding]."   20 U.S.C.

§ 1681(a) (emphasis added).  If a person can be "subjected to harassment" without experiencing any harassment as a result of the defendant's conduct, then a person can also be "subjected to discrimination" without experiencing any discrimination as well.  And that surely can't be right. The Supreme Court has long debated whether the phrase "subjected to discrimination" (used in various statutes) requires the plaintiff to prove a discriminatory intent.  *See, e.g.*, *Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582 (1983).  But no one has questioned whether the plaintiff must prove some discriminatory *effect*.

Consider also the statutory context.  The phrase "subjected to discrimination" appears in a parallel list with the phrases "excluded from participation" and "denied the benefits." 20 U.S.C. § 1681(a).  To "exclude" means to "shut out," "hinder the entrance of," or "expel." *Random House Dictionary of the English Language* 497 (1966); *Webster's Third New International Dictionary* 2275 (1961).  So to be "excluded from participation" means that something blocked your participation—not just that something made it more likely that you wouldn't be able to participate.  To "deny" (as relevant here) means "to withhold" or "refuse to grant."  *Random House Dictionary of the English Language* 387 (1966); *Webster's Third New International Dictionary* 603 (1961).  So to be "denied [ ] benefits" means that something held the benefits back—not just that something made it more likely that you wouldn't be able to receive them.  This context reinforces the point.  To be "subjected to discrimination" means that something led you to experience discrimination—not just that something made it more likely that you would face it.

And if you're still not convinced, two more points favor this reading.  First, Congress enacted Title IX under the Spending Clause.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998).  In effect, Congress offered the states a deal:  they would receive federal funding so long as they complied with the requirements of Title IX.  But the states could not knowingly accept that offer if they didn't know its terms.  So Congress had to identify any condition on its funding "unambiguously."  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  And if it didn't, then the states may not be held liable for a violation.  *See Gebser*, 524 U.S. at 287–88.  So even if there were any ambiguity, that very ambiguity would require us to adopt the less expansive reading of Title IX.

Second, the opinion in *Davis* itself supports this reading.  There, the Court went to great lengths to emphasize the narrowness of its decision.  *See Davis*, 526 U.S. at 648–49, 652–53.  And it expressly warned against any "characterization" of its opinion that would "mislead courts to impose more sweeping liability" than Title IX requires.  *Id.* at 652.  But some of our sister circuits have adopted just such a characterization.  To hold schools liable for any act or omission that makes students "vulnerable to" harassment is to hold schools liable for a wide range of decisions.  Could a university be held liable for reducing its Title IX staff as a result of budget cuts?  What about for allowing a bar to open on campus?  Or for expanding coed housing options?  All these decisions could make students vulnerable to harassment.  Yet surely Title IX does not make schools liable for these everyday decisions.  In short, I would not read the term "subjects" so broadly as to erase the causation requirement enacted by Congress and confirmed by the Supreme Court.

Of course, all this does not resolve what should count as "discrimination" under Title IX.  But the plaintiffs in this case premised their suit on student-on-student harassment.  And *Davis* made clear that "discrimination" in such cases means "severe, pervasive, and objectively offensive" harassment—not just the risk of harassment.  *Id.* at 650.  We have no authority to say otherwise.

For these reasons, the plaintiffs have failed to state a claim under Title IX.  The plaintiffs have not adequately alleged that they experienced any harassment *after* Michigan State University had notice of their complaints.  As a result, they cannot show that the University "subjected" them to harassment.

_____

## CONCURRENCE

_____

ROGERS, Circuit Judge, concurring.  I join parts I, III, and IV of the majority opinion, and concur in the result.  I agree with the analysis in support of our holding that a Title IX sexual harassment plaintiff must plead post-notice sexual harassment, and that mere vulnerability to sexual harassment after the school has actual notice is not enough.

There is no reason, however, for us to address what a plaintiff must show to establish the required actual notice.  What constitutes actual notice in this case is not at issue, and in particular was not an issue discussed by the parties on appeal.  The plaintiffs here all allege sufficiently severe sexual assault, plus reporting to MSU, to demonstrate that they meet the actual notice requirement under Title IX.  Any statement by us that notice must, as one example, be notice of "actionable" sexual harassment is accordingly not necessary to our decision and, whether right or wrong, is usefully avoided and in any event not controlling on future panels.

Judge Leval, in his timeless 2005 Madison Lecture, tellingly criticized the tendency of judges "to promulgate law through utterance of dictum made to look like a holding—in disguise, so to speak. When we do so, we seek to exercise a lawmaking power that we do not rightfully possess."  Pierre Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1250 (2006).

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 17-2445/18-1715

EMILY KOLLARITSCH, et al.,

     Plaintiffs - Appellees,

      v.

MICHIGAN STATE UNIVERSITY BOARD OF
TRUSTEES; DENISE MAYBANK, in her individual
and official capacity as Vice President for Student Affairs,

     Defendants - Appellants.

> **FILED**
> Dec 12, 2019
> DEBORAH S. HUNT, Clerk

Before:  BATCHELDER, ROGERS, and THAPAR, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of defendants' motion to dismiss is REVERSED, and the case is REMANDED for entry of judgment dismissing plaintiffs' Complaint.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk